Claude D. BELL, Jr., Appellant,

v.

SAFECO TITLE INSURANCE COMPANY, Metro County Title Company, Safeco Land Title of Dallas, and Norma Beasley, Appellees.

No. 05–91–00255–CV.

Court of Appeals of Texas, Dallas.

Feb. 13, 1992.

Rehearing Denied March 27, 1992.

**158**

Joe Hill Jones, Dallas, Jerry L. Hughes, Austin, for appellant.

A. Burch Waldron, Ft. Worth, Penny D. Jones, Dallas, B. Blake Cox, Ft. Worth, for appellees.

Before LAGARDE, KINKEADE and ROSENBERG, JJ.

## OPINION

KINKEADE, Justice.

Claude D. Bell, Jr., independent administrator of the Claude Bell, Sr., estate, appeals the probate court's summary judgment in favor of Safeco Title Insurance Company, Metro County Title Company, Safeco Land Title of Dallas, and Norma Beasley. In five points of error, Bell, Jr., argues that the probate court erred in (1) granting summary judgment in appellees' favor and (2) denying his motion for summary judgment. He also argues that appellees failed to prove that (3) they did not participate in fraudulent conduct or a conspiracy against Bell, Sr., (4) they did not owe a duty or breach a duty to Bell, Sr., and (5) an agency relationship existed between Safeco Title Insurance Company and Safeco Land Company (collectively referred to as Safeco) and Metro County Insurance Company (Metro). Because the probate court did not err in granting appellees' motions for summary judgment and Metro did not breach its duty to Bell, Sr., we affirm the probate court's judgment.

### FACTUAL AND PROCEDURAL HISTORY

Claude Bell, Sr., an attorney, owned thirty-three acres of land near the intersection of Belt Line and Preston Road. After several prospective buyers approached him about selling his land, Bell, Sr., entered into a contract to sell the land to Jeff Noebel, a friend and a realtor. Bell, Sr., later terminated the contract with Noebel and entered into a contract of sale with Quantum Equities, Inc., who later assigned the contract to Bellbrook. Noebel was one of the principals of Bellbrook Joint Venture (Bellbrook). Metro, an independent title company, received notice of the original contract of sale.

Approximately one year later, Sunbelt Service Corporation, Bellbrook's financier, contacted Metro and requested a mortgage title policy in connection with the pending sale. The contract of sale called for two million dollars to be delivered to Bell, Sr., at the time of the closing. Metro handled the property's closing, and Pam McFerrin,

a vice president at Metro, served as the escrow agent for the closing.

Because Bell, Sr., wanted to deposit the property's sale proceeds immediately after the closing, he requested that the closing take place at the bank. Bell, Sr., brought the deed he had drafted, which contained several restrictive covenants concerning residential buildings with him to the closing sale. The deed gave only the grantee (Bellbrook) the right to enforce the deed restrictions. Bell, Sr., intended the deed restrictions to remain in place after the sale of the property. Sunbelt, however, wanted Bell, Sr., to terminate or to subordinate the deed restrictions. Before the closing; McFerrin spoke to Sunbelt's attorney and told him that any additional documents relative to the subordination agreement would have to be signed by the seller, Bell, Sr.

After examining the deed at the closing, McFerrin went into another office and called Norma Beasley, an executive at Metro. Beasley suggested that McFerrin insert "Bellbrook JV" after the word "grantee" to make the deed more precise. After McFerrin made the interlineations, Noebel asked her to explain the escrow agreement to Bell, Sr. Bell, Sr., requested that the escrow agreement be typed. After the agreement was typed, McFerrin signed and read the agreement to Bell, Sr. The agreement provided for Metro to receive and to record loan papers of the sale, to disburse funds to the seller, and to issue a mortgagor's title policy to the lender.

Afterward, the parties waited for the lender's attorneys to deliver a packet of corrections to the deed for each party to sign. When the corrections arrived, McFerrin read the corrected page to the lender's attorney. While Noebel discussed the subordination agreement with Bell, Sr., McFerrin called Beasley about the interlineations. Beasley told McFerrin to read the deed corrections to Bell, Sr. McFerrin read the interlineations to Bell, Sr., and asked him to initial the handwritten interlineation on pages one and seven of the deed and to sign the new page twelve of the deed. Immediately following the closing, Bell,

Sr., placed the proceeds of the sale into an interest bearing account at the bank.

Four months later, Bellbrook sold the land to a development corporation for five million dollars. Fourteen months after the sale, Bell, Sr., became incompetent. Because the interlineations made the deed restrictions unenforceable by Bell, Sr., Bell, Jr., filed suit on behalf of his father's estate against Safeco, Metro, and Beasley. He alleged fraudulent conduct, breach of a fiduciary duty, and civil conspiracy. Bell, Jr., sued Safeco because Metro and Safeco had an agreement for Metro to issue title insurance on Safeco's behalf. Sometime after April 1986, Bell, Sr. died. Safeco, Metro, and Beasley filed motions for summary judgment. After reviewing Bell, Jr.'s response to the motions for summary judgment, the probate court granted appellees' motions.

### SUMMARY JUDGMENT

In Bell, Jr.'s first point of error, he contends that the trial court erred in granting summary judgment in favor of appellees. Bell, Jr., argues that the probate court erroneously relied upon the affidavits of interested parties and that the affidavits are not readily controvertible due to the death of Bell, Sr.

Summary judgment may be rendered only if the pleadings, depositions, admissions and affidavits show (1) that there is no genuine issue as to any material fact and (2) that the moving party is entitled to judgment as a matter of law. Tex. R.Civ.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 413 (Tex.1989). A summary judgment seeks to eliminate patently unmeritorious claims and untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

Under rule 166a, both the plaintiff and the defendant may simultaneously move for summary judgment. When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of

the other to discharge its burden. *Cove Inv., Inc. v. Manges,* 602 S.W.2d 512, 514 (Tex.1980). To prevail on a summary judgment, a plaintiff must conclusively prove all of the elements of the cause of action as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); Tex.R.Civ.P. 166a. In contrast, a defendant as movant must either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). Since both parties moved for summary judgment, this Court considers all evidence accompanying both motions. *Edinburg Consol. I.S.D. v. St. Paul Ins. Co.,* 783 S.W.2d 610, 612 (Tex.App.— Corpus Christi 1989, writ denied). After determining all questions presented, this Court may reverse the trial court's judgment and render the judgment the trial court should have rendered, including rendering judgment for the other movant. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988).

■ Summary judgment may be granted on the basis of uncontroverted testimonial evidence of an interested witness if that evidence "is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989); Tex.R.Civ.P. 166a(c). If the non-movant must come forward with independent evidence to prevail, then summary judgment is appropriate in the absence of such controverting proof. *Casso,* 776 S.W.2d at 558.

■ At the summary judgment hearing, the trial court had before it the depositions of (1) Beasley, (2) Lamar Tims, a senior vice-president and attorney for Metro, (3) McFerrin, (4) Noebel, (5) Lori Leeth, a bank employee at the time of the property's closing, (6) James Fisher, a principal in Bellbrook, and (7) Bell, Jr. The trial court also had a copy of the deed drafted by Bell, Sr., with the interlineations and the signed escrow agreement. The summary judgment evidence concerning the depositions was uncontroverted. Even though the witnesses were interested, their depositions still are competent evidence that the trial court can consider in making its summary judgment decision. *Cf. id.,* 776 S.W.2d at 558. Safeco relied heavily upon the deposition of Bell, Jr., for its summary judgment motion. Bell, Jr., testified that a few weeks after the closing he showed his father a copy of the deed. In response to Bell, Jr.'s comment that he had given up valuable rights, Bell, Sr., stated "Well, I got my money and I didn't give up any rights." Although Bell, Sr., was incompetent and later died before the trial court granted the summary judgment, his son's deposition clearly indicates Bell, Sr.'s state of mind shortly after the closing. Bell, Sr.'s statements to his son, rather than controverting any of the other deposition testimony, lend credence to it. Other than the second sale for five million dollars, Bell, Jr., offers no reasonable explanation to support his conspiracy theory. Bell, Jr., failed to come forward with any controverting evidence. He relies solely on his father's death for his argument. The trial court had before it the depositions of interested witnesses from both parties and decided in appellees' favor. Because the deposition testimony is uncontroverted, the probate court did not err in granting summary judgment in favor of the defendants. We overrule Bell, Jr.'s first point of error.

## AN ESCROW AGENT'S DUTIES

In his third point of error, Bell, Jr., contends that appellees owed and breached their duty of disclosure as an escrow agent to Bell, Sr. Specifically, Bell, Jr., argues that the escrow agent owed a duty to inform Bell, Sr., about the consequences of signing the interlineations.

An escrow is a written instrument that imports a legal obligation. *Wilson v. Carver Fed. Sav. & Loan Ass'n,* 774 S.W.2d 106, 107 (Tex.App.—Beaumont 1989, no writ). In accordance with the escrow agreement, the grantor deposits the funds or property with a neutral third party. *Id.*

The purpose of requiring a grantor to place funds or property in escrow is to protect the promisee by having a neutral third party hold the item until the performance of a condition or the happening of a certain event, and then the escrow agent delivers the item to the grantee. *Vector Indus., Inc. v. Dupre,* 793 S.W.2d 97, 101 (Tex. App.—Dallas 1990, no writ).

 The escrow relationship is a stakeholder relationship that carries special duties. *Wilson,* 774 S.W.2d at 107. Bell, Jr., argues that an escrow agent owes each party the obligation to explain the consequences of interlineations, but cites this Court to no relevant authority for this proposition. An escrow agent acts as a neutral third party. *Vector Indus., Inc.,* 793 S.W.2d at 101. The escrow agent owes a fiduciary duty to both parties of the escrow contract. *Trevino v. Brookhill Capital Resources, Inc.,* 782 S.W.2d 279, 281 (Tex.App.—Houston [1st Dist.] 1990, writ denied). The fiduciary duty consists of (1) the duty of loyalty, (2) the duty to make full disclosure, and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it. *Id.* A fiduciary must act with utmost good faith and avoid any act of self-dealing that places his personal interest in conflict with his obligations to the beneficiaries. *Trevino,* 782 S.W.2d at 281.

An "escrow officer" means an attorney, bona fide employee of either an attorney licensed as an escrow officer, bona fide employee of a direct operation, or bona fide employee of a title insurance agent whose duties include any or all of the following:

(1) countersigning title insurance forms,
(2) supervising the preparation and supervising the delivery of title insurance forms,
(3) signing escrow checks, or
(4) closing the transaction.

TEX.INS.CODE ANN. art. 9.02(g) (Vernon Supp.1992).

"Closing the transaction" means the investigation made on behalf of a title insurance company, title insurance agent, or direct operation before the actual issuance of the title policy. The investigation determines whether:

(1) there has been proper execution, acknowledgement, and delivery of all conveyances, mortgage papers, and other title instruments that may be necessary to the consummation of the transaction,
(2) all delinquent taxes are paid,
(3) all current taxes based on the latest available information have been properly prorated between the purchaser and seller in the case of an owner policy,
(4) the consideration has been passed,
(5) all proceeds have been properly disbursed,
(6) a final search of the title has been made, and
(7) all necessary papers have been filed for record.

TEX.INS.CODE ANN. art. 9.02(n) (Vernon Supp.1992).

 Bell, Jr., argues that McFerrin had a duty to explain the consequences of the interlineations to Bell, Sr. As an escrow agent, Metro acted as a neutral third party to receive and record the proper documents, to disburse the funds from the lender to Bell, Sr., and to issue an owner title policy to Bellbrook and a mortgager's title policy to the bank. The evidence shows that Metro fulfilled its obligations under its contract to Bell, Sr. Metro did not breach its duty of loyalty, fail to fully disclose, or improperly handle the money. While Metro had a duty to point out the interlineations, it did not have a duty to explain the signing of the interlineations because to do so would have breached its duty to both parties to remain a neutral third party at the closing. Despite his advanced years, Bell, Sr., was an attorney who was mentally competent at the time he signed the interlineations. Metro owed no duty to give him legal advice on the consequences of initialing the interlineations and signing the deed. Because appellees owed no duty to explain the interlineations, they breached no duty to Bell, Sr. We overrule Bell, Jr.'s third point of error.

Because of our disposition of Bell, Jr.'s first and third points of error, we need not reach his second, fourth, and fifth points of error, which address the trial court's denial of his motion for summary judgment and the agency relationship between Safeco and Metro.

We affirm the probate court's judgment.