Victoria BLACK, Plaintiff-Appellant,

v.

METRO TITLE, INC., Defendant-Respondent.

Court of Appeals

*No. 2005AP1423. Submitted on briefs January 6, 2006.*
*—Decided February 15, 2006.*

2006 WI App 52

(Also reported in 712 N.W.2d 395.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Brad L.F. Hoeschen* of *Greenberg & Hoeschen, LLC* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John G. Goller* of *von Briesen & Roper, S.C.* of Milwaukee.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. BROWN, J. Victoria Black agreed to sell her interest in a house jointly owned by her and her former husband in return for half of the equity, as per a marital settlement agreement. The former husband went to a lender to refinance the house, presumably to obtain liquidity in the equity, and the closing on the refinance took place before Metro Title, Inc. as escrow agent. After Victoria signed the quitclaim deed, Metro refused to pay her one-half of the equity. She left the closing, and her former husband Gunnard Black apparently received the full amount of the equity. Then he squandered most of it. Victoria now claims that Metro was negligent in its duties as an escrow agent and owes her

damages. But she has not shown that she was a party to the agency, and Metro's summary judgment affidavit, undisputed by Victoria, is that Victoria was only an incidental beneficiary. An escrow holder is an agent and fiduciary of only the parties to the escrow. We affirm the summary judgment in favor of Metro.

¶ 2. This is a review of a summary judgment. The methodology is well known and need not be discussed at length here. It is sufficient that we simply cite to *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983), where the more extended discussion is found. We apply the methodology set forth in *Preloznik* to this case. As we see this case, the facts are not disputed and the question is one of law. Therefore, the case before the trial court was ripe for summary judgment and we will review the case on that basis.

¶ 3. The complaint alleged that when Victoria was divorced from Gunnard, a marital settlement agreement was incorporated in the order of the court. Both the divorce judgment and the marital settlement agreement were appended to the complaint. Victoria was listed as the petitioner in that divorce action and Gunnard was the respondent. In pertinent part, the marital settlement agreement read as follows:

> Petitioner and Respondent feel it is in the minor children['s] best interest to continue to allow the minor children to reside at the permanent residence. Petitioner agrees to allow the Respondent and children to continue occupancy . . . for a period of time . . . .
>
> Notice of the decision to sell the residence . . . shall be made by notifying the Respondent by registered mail . . . . Respondent shall have a right of first refusal to purchase said property. The price of the property for

the right of first refusal . . . will be agreed upon by the Petitioner and Respondent . . . .

. . . .

*Upon the sale of the property, the remaining mortgage and all costs and expenses shall be paid off and the resulting balance shall be split between the Petitioner and Respondent as follows: fourteen thousand one hundred dollars ($14,100) will be given to the Petitioner and then the remainder will be split equally between the Petitioner and the Respondent.* (Emphasis added.)

¶ 4. The complaint next alleged that on or about March 22, 2001, Victoria took part in a transaction where she was to sell her interest in the property to Gunnard, that the equity at the time of this sale was approximately $96,200 and that Metro acted as the closing agent for this transaction. Victoria's complaint also alleged that, per the marital settlement agreement, her portion of the remaining equity was $41,050. Victoria further alleged that Metro had her execute a quitclaim deed, transferring her interest in the property to Gunnard, that she signed the quitclaim deed believing she would receive the equity and then was informed by Metro's agent that she would only be receiving the $14,100 portion of the settlement and not her equity portion.

¶ 5. Upon being informed that she would not be receiving her portion of the equity, Victoria claimed that she refused to sign the real estate transfer tax return and left with that unexecuted return. She alleged that, thereafter, Metro created a new real estate transfer return and had Gunnard sign as both grantor and grantee. Victoria further alleged that she only received $14,100 from Metro, that Gunnard eventually sold the property for $125,000 and that the remaining equity at

217

that time was less than $10,000. She claimed she was forced to amend the divorce findings to get an additional judgment against Gunnard and that the family court acknowledged that she was entitled to her equity at the time of the sale.

¶ 6. Victoria asserted in her complaint that the above facts showed negligence on the part of Metro. She alleged that she had an interest in the property by reason of the divorce judgment and marital settlement agreement, that she was entitled to her half of the equity, that Metro failed to inform her prior to the execution of the quitclaim deed that it would not distribute her portion of the equity to her and also failed to inform her of the "financial ramifications" of the sale of her interest. She concluded that Metro was negligent in not carrying out the terms of the marital settlement agreement. As damages, she claimed that Metro should pay her the equity she is owed.

¶ 7. Metro raised several alternative affirmative defenses to the complaint. The trial court chose one of them. On appeal we choose not to rely on the affirmative defense relied upon by the trial court. Since this is de novo review, we do not have to discuss our reasons why we choose to disregard the reason given by the trial court. And we will not. Suffice it to say, it is not necessary to discuss each of the affirmative defenses that will support summary judgment when one will do.

¶ 8. One of Metro's contentions raised before the trial court and one that is advanced again on appeal is that an escrow agent has no duty toward incidental beneficiaries to an escrow and that Victoria was an incidental beneficiary. Metro cites *Dorsett Bros. Concrete Supply, Inc. v. Safeco Title Insurance Co.*, 880 S.W.2d 417 (Tex. App. 1993), as support. In response,

Victoria argues that other cases impose a greater duty. She cites, for example, *Talansky v. Schulman*, 770 N.Y.S.2d 48, 53 (N.Y. App. Div. 2003), which says: "It is settled law that an escrow agent owes his or her beneficiary a fiduciary duty." She also quotes a case which she interprets to say that not only does the escrow agent owe a fiduciary duty to all parties involved in the contract, it also must act with good faith and avoid self-dealing that places its interest in conflict with its obligations to beneficiaries. *See Gonzales v. American Title Co. of Houston*, 104 S.W.3d 588 (Tex. App. 2003). She further quotes a case that says an escrow agent must use ordinary skill and diligence and must act with scrupulous honesty. *See Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 63 P.3d 125 (Wash. 2003).

¶ 9. This is all fine and good. But Victoria has not bothered to explain the facts in those cases and how the fact situations in those cases apply here. Had she done so, she would have discovered that, in each case where a duty was found, the plaintiff was a *party* to the escrow contract. We have reviewed the case law and conclude that, in general, the plaintiff must be a party to the contract. The law does recognize exceptions to this general rule. For example, an escrow agent may be held accountable where a third party is the victim of fraud on the part of the escrow agent. An escrow agent may also be held responsible if he or she engages in self-dealing or shows a conflict of interest. The problem here for Victoria is that she has in no way shown that she is a party to the contract or that any exception applies to her. Absent those facts, we must fall back on the general rule that an escrow holder's obligations are limited to compliance with the parties' instructions.

¶ 10. We get good instruction from *Bell v. Safeco Title Insurance Co.,* 830 S.W.2d 157 (Tex. App. 1992). We quote it at length.

> An escrow is a written instrument that imports a legal obligation. *Wilson v. Carver Fed. Sav. & Loan Ass'n,* 774 S.W.2d 106, 107 (Tex. App—Beaumont 1989, no writ). In accordance with the escrow agreement, the grantor deposits the funds or property with a neutral third party. *Id. The purpose of requiring a grantor to place funds or property in escrow is to protect the promisee by having a neutral third party hold the item until the performance of a condition or the happening of a certain event, and then the escrow agent delivers the item to the grantee. Vector Indus., Inc. v. Dupre, 793 S.W.2d 97, 101 (Tex. App.—Dallas 1990, no writ).*
>
> The escrow relationship is a stakeholder relationship that carries special duties. *Wilson,* 774 S.W.2d at 107. Bell, Jr., argues that an escrow agent owes each party the obligation to explain the consequences of interlineations, but cites this Court to no relevant authority for this proposition. An escrow agent acts as a neutral third party. *Vector Indus., Inc.,* 793 S.W.2d at 101. The escrow agent owes a fiduciary duty to both parties of the escrow contract. *Trevino v. Brookhill Capital Resources, Inc.,* 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1990, writ denied). The fiduciary duty consists of (1) the duty of loyalty, (2) the duty to make full disclosure, and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it. *Id.* A fiduciary must act with utmost good faith and avoid any act of self-dealing that places his [or her] personal interest in conflict with his [or her] obligations to the beneficiaries. *Trevino,* 782 S.W.2d at 281.

*Bell,* 830 S.W.2d at 160–61 (emphasis added). Further, the California Supreme Court explained in *Summit*

*Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 41 P.3d 548, 552 (Cal. 2002), that the escrow holder has " 'no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' " (Citations omitted.) *See also id.* at 549, 552 (holding an escrow holder owes no duty of care to a nonparty to the escrow; recognizing fraud exception to the limited duty to merely follow parties' instructions).

¶ 11. Having found the law, we now apply it to the facts in the summary judgment record. The affidavit of Wanda Brooks, then the agent of Metro, averred that the parties to the transaction were First State Mortgage Corporation, Metro and Gunnard. She further averred that the closing instructions did not require or permit her, as closing agent, to pay Victoria half of the equity in the home.

¶ 12. From this affidavit, we glean that the grantor was likely First State Mortgage and the grantee, the other party to the lending transaction, was Gunnard. Metro served as the neutral third-party stakeholder to the transaction. In line with the teaching in *Bell*, this means that First State Mortgage, Gunnard and Metro were parties to the escrow but not Victoria.

¶ 13. Victoria's counteraffidavit does nothing to dispel this assertion of the facts. At the most, she tells how she was present at the closing and thus was a party to the "transaction." But being present at the transaction in contemplation of a payout does not make her a party to the agency agreement, and that is the key ingredient missing from her summary judgment papers.

221

¶ 14. We note again that the exception to the general rule is found where there is some kind of fraud on the part of the escrow holder or some dishonesty or absence of good faith in a case alleging self-dealing. Evidence along those lines may expose the escrow holder to liability to beneficiaries outside of the escrow contract. But there is no evidence in the summary judgment record that Wanda Brooks or Metro was guilty of such conduct.

¶ 15. On this appeal, we deem the sole issue to be whether there is a cause of action for negligence and a duty on the part of Metro to disclose to Victoria that its instructions did not include giving her half of the equity. We have held that there was no such duty. We cannot, however, leave this discussion without noting that, in her complaint, Victoria also alleged causes of action sounding in intentional misrepresentation and interference of contract. Both of those claims alleged some species of fraud on Metro's part, but both were dismissed by partial summary judgment and are not appealed. This is for good reason because Victoria produced no facts in the summary judgment record to show fraud. This is more the pity because we suspect Victoria got snookered. We just do not know the extent of Metro's involvement, if any. There was no discovery of the people involved in this transaction who were at First State Mortgage, so we do not know what they knew about the equity payout and what, if anything, they instructed Metro to do regarding it. Nor do we know what Gunnard told First State Mortgage or Metro or what they told Gunnard. There is simply a complete lack of adequate discovery. Victoria backhandedly claims that she was denied further discovery by the trial court before summary judgment, but Metro points out that Victoria never invoked the WIS.

STAT. § 802.08(4) (2003–04)[1] procedure to ask for further time to do discovery.[2] On the record, we have no choice but to affirm.[3]

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] While it is not important to our decision, we must state our distaste for the lack of candor exhibited by Victoria's counsel in her brief-in-chief. In that brief, counsel alleged that the trial court improperly granted Metro's motion to strike Victoria's affidavit, filed in opposition to the motion for summary judgment, because it was rendered in an untimely manner contrary to Waukesha County Local Court Rule. This led us to believe that the trial court had not, in fact, considered it. It was not until reading the respondent's brief and reviewing the record that we discovered that the trial court did ultimately decide to consider the affidavit because it wanted to act on the side of "caution." The trial court made this choice even though it had agreed with Metro that the affidavit was untimely. In reply, rather than own up to the lack of candor, counsel attempted to justify raising the issue by reasoning that since the trial court had initially ruled in favor of Metro's motion to strike, the issue was still tenable. We are at a loss to understand why when the end result is that the affidavit was considered. But more to the point, counsel fails to understand that any reasonable person reading the appellant's brief would come away with the understanding that, as a matter of fact, the trial court did not consider Victoria's affidavit. This is simply a falsity. In *Wisconsin Natural Gas Co. v. Gabe's Construction Co.*, 220 Wis. 2d 14, 18 n.3, 582 N.W.2d 118 (Ct. App. 1998), this court explained that false and misleading statements in briefs filed in court contravene not only WIS. STAT. § 802.05(1)(a), but also SCR 20:3.3, which requires candor toward tribunals. In this case, the brief-in-chief was made suspect by Metro's response, and the record is revealing. We admonish counsel that good appellate argument requires complete candor when reciting what occurred in the trial court.

[3] Metro has moved for attorneys fees and costs on grounds that this appeal is frivolous pursuant to WIS. STAT. RULE

*By the Court.*—Order affirmed.

809.25(3)(c)2. We deny the motion. To be frivolous, the appeal must be without any basis in law. The issue of what duties escrow agents have toward parties to an escrow transaction has never been the subject of an appellate decision in Wisconsin. While we are less than enamored with appellant's presentation of this issue on appeal, or indeed its presentation in the trial court, that is not a ground upon which to find the appeal frivolous.