LAKE BEULAH MANAGEMENT DISTRICT, Plaintiff-Appellant,†

v.

VILLAGE OF EAST TROY, Defendant-Respondent.

Court of Appeals

*No. 2009AP2021. Submitted on briefs June 8, 2010.*
*—Decided August 25, 2010.*

2010 WI App 127

(Also reported in 791 N.W.2d 385.)

† Petition For Review granted 11/5/10.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. ANDERSON, J. The Lake Beulah Management District (the District) appeals from an order granting summary judgment to the Village of East Troy

(the Village) invalidating the District's 2006 ordinance regulating the withdrawal of groundwater. The state legislature's explicit grant of authority to the Wisconsin Department of Natural Resources (DNR) preempts the District's ordinance. We affirm the circuit court on this ground.

¶ 2. This case represents the latest chapter in ongoing litigation stemming from Well #7. We cite a recently released companion case, *Lake Beulah Management District v. DNR*, 2010 WI App 85, 327 Wis. 2d 222, 787 N.W.2d 926, for relevant background information. In 2000, the Village began searching for a new well site in order to provide an adequate water supply to its citizens. The site chosen was approximately 1400 feet from Lake Beulah, an 834–acre lake in Walworth county. *Id.*, ¶ 3. This site was subsequently annexed into the Village in August 2003.

¶ 3. In June 2003, the DNR approved a permit for the construction of the well, dubbed Well #7. Based on the opinion of a consultant hired by the Village, the DNR concluded the well "would avoid any serious disruption of groundwater discharge to Lake Beulah." *Id.* After a swarm of litigation delayed construction, an "extension" of the DNR's permit was granted in September 2005. In *Lake Beulah* we held that this extension operated as a new permit, thus avoiding any conflict with the expiration date of the 2003 permit. *See id.*, ¶ 14. Construction ultimately began in 2006 and the well was operational by August 1, 2008. It is estimated that Well #7 has a pumping capacity of up to 1,440,000 gallons per day. *See id.*, ¶ 3. In *Lake Beulah* we held that the DNR had the authority to review the public trust implications of Well #7, and we remanded to the DNR to reconsider its approval of Well #7 in light of

evidence suggesting a more adverse environmental impact than previously believed. *Id.*, ¶ 39.

¶ 4. The instant case concerns the District's attempt to circumvent the DNR's approval of Well #7 by passing an ordinance preventing operation of the well. In 1968, the town of East Troy[1] formed the Lake Beulah Sanitary District pursuant to WIS. STAT. §§ 60.77 and 60.78 (2007–08).[2] The sanitary district was empowered as a "body corporate with the powers of a municipal corporation." Sec. 60.77(2). In 1995, the town of East Troy converted the sanitary district into the Lake Beulah Lake Management District under WIS. STAT. § 33.235(1m). The converted District retained its previous responsibilities while also obtaining the powers of a lake district under WIS. STAT. § 33.22(1). *See* § 33.22(3)(b)1. This empowered the District to "select a name for the district, sue and be sued, make contracts, accept gifts, purchase, lease, devise or otherwise acquire, hold, maintain or dispose of property, disburse money, contract debt and do any other acts necessary to carry out a program of lake protection and rehabilitation." Sec. 33.22(1).

¶ 5. On December 11, 2006, the District adopted Ordinance No. 2006–03 (the Ordinance), entitled An Ordinance Prohibiting the Net Transfer of Groundwater and Surface Water from Lake District Hydrologic Basin. The Ordinance prohibited the transfer or diversion of surface water or groundwater out of the District's jurisdiction without a permit:

---

[1] The town of East Troy is not to be confused with the *Village* of East Troy, the respondent in the instant case.

[2] All references to the Wisconsin Statutes are to the 2007–08 version, unless otherwise noted.

Section 2. PROHIBITED ACTS. It shall be unlawful and prohibited by this Ordinance for any person or entity to do any of the following unless such acts are authorized in advance by and performed in conformance with a valid permit issued by the District pursuant to this Ordinance:

A. Divert or transfer surface water out of the Lake Beulah Surface Water Drainage Basin. ·

B. Divert, transfer, or induce the diversion or transfer of groundwater out of the Lake Beulah Groundwater Basin.

E. Withdraw groundwater from within the Lake Beulah Groundwater Basin and then divert or transfer said water out of the Lake Beulah Groundwater Basin.

¶ 6. Notably, the Ordinance applies regardless of whether acts causing water withdrawal occur inside or outside the District's boundaries. Moreover, the Ordinance states that no permit will be issued "unless a volume of water equal to at least 95% of the water actually diverted or transferred is returned to the Hydrologic Basin at the location(s) where the adverse effects of the proposed use, action, diversion or transfer will be mitigated."

¶ 7. This Ordinance clearly implicates the proposed use of Well #7, which the District alleges would "intercept and remove groundwater that would otherwise sustain Lake Beulah." While the well is not located within the District's physical boundaries, the District has included the well site within the Lake's "groundwater basin." Under a separate DNR permit, the water used by the Village is ultimately discharged into a different body of water, so ninety-five percent of the water removed by the well would not be returned to the basin as the Ordinance purports to require.

646

¶ 8. It quickly became clear that the Village had no intention to comply with the Ordinance. Soon after the Ordinance was adopted, the Village wrote a letter to the District asserting that the District had no legal authority to pass it. In May 2007, the District requested records describing how the Village intended to "physically transport[] water back into the Lake Beulah Hydrologic Basin after water from Well #7 has been transported outside of said Basin," presumably in enforcement of the Ordinance. In response, the Village asked for "the District's purported basis of authority to enact and enforce" the Ordinance. When the District insisted upon "a 'yes' or 'no' answer," the Village relayed its belief that its legal obligations did not include the Ordinance.

¶ 9. On July 22, 2008, the District brought an action for declaratory judgment upholding the Ordinance. The Village moved for summary judgment, arguing, inter alia, that the Ordinance was preempted by and conflicted with state law.[3] The circuit court granted summary judgment and found the Ordinance "void and unenforceable in that it conflicts with state law, and . . . invalid as applied to the Village." The District appeals.[4]

---

[3] The parties also sparred over whether the District had any general regulatory authority to enact the Ordinance and whether the District had "extraterritorial" authority to enforce the Ordinance on the Village. However, our analysis is limited to the preemption issue, which is dispositive. Therefore, while these arguments were made again on appeal, we do not address them here. *See Walgreen Co. v. City of Madison*, 2008 WI 80, ¶ 2, 311 Wis. 2d 158, 752 N.W.2d 687 (noting that when resolution of one issue is dispositive, we need not reach other issues raised by the parties).

[4] The Village also moves to strike a portion of the District's reply brief on appeal, arguing that a portion of that brief raised

¶ 10. We review a grant of summary judgment de novo. *See Umansky v. ABC Ins. Co.*, 2009 WI 82, ¶ 8, 319 Wis. 2d 622, 769 N.W.2d 1. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. 802.08(2). Whether the Ordinance is preempted as a matter of law is a question we review independently, while benefiting from the analysis of the circuit court. *See DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 652, 547 N.W.2d 770 (1996).

¶ 11. The District operates "with the powers of a municipal corporation" under WIS. STAT. § 60.77(2), and "municipality" in this context is explicitly inclusive of lake protection and rehabilitation districts. WIS. STAT. § 281.01(6). Therefore, the District "may pass ordinances which, while addressed to local issues, concomitantly regulate matters of statewide concern." *See DeRosso*, 200 Wis. 2d at 650. This is to say that the District's ordinances are not presumed invalid simply because they invoke a matter of statewide concern, such as the drilling of high-capacity drinking water wells. However, the long-standing rule is that a municipal ordinance may not conflict with state legislation; otherwise, the ordinance is preempted. *See Fox v. City of Racine*, 225 Wis. 542, 546, 275 N.W. 513 (1937). Generally, a municipal ordinance is preempted if "(1) the

a new issue for the first time on appeal. In January, we issued an order holding the motion in abeyance. We deny the motion. The disputed portion of the brief concerned the District's extraterritorial authority, and the wholly separate issue of preemption is dispositive. *See Walgreen Co.*, 311 Wis. 2d, ¶ 2 (noting that when resolution of one issue is dispositive, we need not reach other issues raised by the parties).

legislature has expressly withdrawn the power of municipalities to act; (2) it logically conflicts with state legislation; (3) it defeats the purpose of state legislation; or (4) it violates the spirit of state legislation." *DeRosso*, 200 Wis. 2d at 651–52. If any one of these tests is met, the municipal ordinance is void. *See id.* at 652.

¶ 12. The DNR's authority is found in Wis. Stat. chs. 280 and 281. Section 280.11(1) provides:

> The department shall, after a public hearing, prescribe, publish and enforce minimum reasonable standards and rules and regulations for *methods to be pursued in the obtaining of pure drinking water for human consumption* and the establishing of all safeguards deemed necessary in protecting the public health against the hazards of polluted sources of impure water supplies intended or used for human consumption, *including minimum reasonable standards for the construction of well pits.* It shall have *general supervision and control of all methods of obtaining groundwater for human consumption* including sanitary conditions surrounding the same, *the construction or reconstruction of wells* and generally to prescribe, amend, modify or repeal any rule or regulation theretofore prescribed and shall do and perform any act deemed necessary for the safeguarding of public health. (Emphasis added.)

¶ 13. These statutes expressly seek to create a "comprehensive program under a single state agency for the enhancement of the quality management and protection of all waters of the state, ground and surface, public and private." Wis. Stat. § 281.11. Further, the legislature explicitly states that the DNR's powers "shall be liberally construed." *Id.*; *see also Wisconsin's Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 528–29, 271 N.W.2d 69 (1978). Wisconsin Stat. § 281.34 specifically deals with "groundwater withdrawals," and provides that any proposed well with a capacity of greater than

100,000 gallons per day—this then includes Well #7—must obtain approval from the DNR before construction can take place. *See* § 281.34(2). The Village twice obtained approval from the DNR to construct Well #7.
■

¶ 14. Conversely, the District's authority stems from aforementioned WIS. STAT. § 33.22(1), which authorizes the District to, inter alia, "do any other acts necessary to carry out a program of lake protection and rehabilitation." The District argues that such language is an express grant of "extremely broad powers to protect the quality of public inland lakes," and allows for the District to pass Ordinances setting standards for the construction of wells. Moreover, the District contends that the DNR's mandate only speaks to "how" groundwater may be withdrawn, while the Ordinance regulates "whether and how much" of the groundwater may be taken. In support, the District relies heavily upon a thirty-nine-page memorandum sent within the office of former Wisconsin Attorney General Peggy A. Lautenschlager, which addressed an ordinance passed by the town of Richfield in 2005.[5] As the memorandum's conclusion endorsed Richfield's ordinance, the District urges us to afford it great weight. However, "while attorney general opinions may be considered persuasive authority, they are not precedent for any court." *FAS, LLC v. Town of Bass Lake*, 2007 WI 73, ¶ 18, 301 Wis. 2d 321, 733 N.W.2d 287. Therefore, it is up to us to decide how much persuasive power we will accord this memorandum.

---

[5] This is not a "formal opinion" from the Attorney General, as the District claims. The first page of the document makes clear that it is a memorandum from the then-assistant attorney general to the then-attorney general. It is not among the attorney general's published opinions.

¶ 15. The circuit court reasoned that, while the legislature had not expressly withdrawn the District's ability to act, the Ordinance logically conflicted with, defeated the purpose of, and violated the spirit of the state's delegation of authority in this sphere to the DNR. In essence, the court determined that the Ordinance violated the second, third, and fourth tests articulated in *DeRosso. See DeRosso*, 200 Wis. 2d at 651–52.

¶ 16. We agree with the circuit court's conclusion. The legislature has explicitly delegated to the DNR the authority to permit the construction of certain wells, and has directed that such authority be construed liberally. *See* Wis. Stat. §§ 280.11(1), 281.11. The Ordinance creates a loophole whereby a DNR-approved well, like Well #7, is prevented from operating in lieu of another localized permit. In essence, the Ordinance casts the District and the DNR as "locomotives on a collision course," in direct conflict with one another. *See State ex rel. Michalek v. LeGrand*, 77 Wis. 2d 520, 530, 253 N.W.2d 505 (1977).

¶ 17. We hold that the Ordinance logically conflicts with, defeats the purpose of, and violates the spirit of the legislature's delegation of authority to the DNR.[6]

---

[6] The Village has moved for attorney fees and costs on grounds that this appeal is frivolous pursuant to Wis. Stat. § 809.25(3)(c)2. We deny the motion. To be frivolous, the appeal must be without any basis in law. *Black v. Metro Title, Inc.*, 2006 WI App 52, ¶ 15 n.3, 290 Wis. 2d 213, 712 N.W.2d 395. Given the presumption of validity with respect to municipal ordinances and the fact that the legislature has not explicitly withdrawn the District's power to pass the Ordinance, we find that the District's appeal, though unsuccessful, is not frivolous. *See State ex rel. Grand Bazaar Liquors, Inc. v. City of Milwau-*

The state intended to create a "comprehensive program" for well construction supervision through the DNR. *See* WIS. STAT. § 281.11. Under a liberal construction of its powers, the DNR cannot be limited simply to regulating "how" groundwater is obtained, as the District claims. If a municipal body could make well construction contingent upon its own permit, based on its own standards, a DNR permit would be wholly insignificant, and the legislature's stated goal of creating a uniform scheme to supervise the extraction of groundwater would be eviscerated. Therefore, the Ordinance conflicts with the general laws of the state and is preempted by the state's delegation of authority to the DNR. *See City of Fond du Lac v. Town of Empire*, 273 Wis. 333, 341, 77 N.W.2d 699 (1956). This reflects the view that, ultimately, "the state must maintain pre-eminence in the control of navigable waters in this state." *DNR v. City of Clintonville*, 53 Wis. 2d 1, 4, 191 N.W.2d 866 (1971) (*citing Muench v. Public Serv. Comm'n*, 261 Wis. 492, 53 N.W.2d 514, 55 N.W.2d 40 (1952)).

¶ 18. Furthermore, even if given great deference, the assistant attorney general's memorandum does not advance the District's arguments. It not only refers to a factually distinct situation involving a different ordinance, but it reaches a limited conclusion—that ordinances directed at the preservation of groundwater are not *presumptively* invalid. If anything, the memorandum serves to weaken the District's position given its suggestion that "under conflict-preemption analysis, a local regulation that would interfere with a DNR groundwater protection measure taken under Chapter

*kee*, 105 Wis. 2d 203, 208, 313 N.W.2d 805 (1982) ("It is a basic maxim of statutory construction that ordinances, like statutes, enjoy a presumption of validity.").

280 would be invalid." That is precisely what has occurred in the instant case.

¶ 19. State law explicitly delegated the authority over high-capacity well permits to the DNR, and the Ordinance is clearly in direct conflict with that authority. Therefore, we hold that the Ordinance is preempted under the *DeRosso* tests and rendered unenforceable. Accordingly, we affirm the circuit court's order granting summary judgment to the Village of East Troy.

*By the Court.*—Judgment affirmed.