LAKE BEULAH MANAGEMENT DISTRICT,
Plaintiff-Appellant-Petitioner,

v.

VILLAGE OF EAST TROY, Defendant-Respondent.

Supreme Court

*No. 2009AP2021. Oral argument April 13, 2011.
—Decided July 6, 2011.*

2011 WI 55

(Also reported in 799 N.W.2d 787.)

For the plaintiff-appellant-petitioner there were briefs and oral argument by *Dean P. Laing,* and *O'Neil, Cannon, Hollman, DeJong & Laing S.C.*

For the defendant-respondent there was a brief and oral argument by *Paul G. Kent, Barbara A. Neider* and *Stafford Rosenbaum LLP.*

¶ 1. N. PATRICK CROOKS, J.   This is a review of a published decision of the court of appeals[1] concluding

---

[1] *Lake Beulah Mgmt. Dist. v. Vill. of E. Troy,* 2010 WI App 127, 329 Wis. 2d 641, 791 N.W.2d 385.

that Lake Beulah Management District's (LBMD) ordinance, purporting to regulate and require permits for certain wells that withdraw water from the area around Lake Beulah, was invalid as preempted by the legislature's grant of authority to the Department of Natural Resources (DNR) to regulate high capacity wells. LBMD brought a declaratory judgment action seeking to enforce the ordinance in regard to a high capacity municipal well, Well No. 7, for which the Village of East Troy (the Village) had obtained a permit from the DNR. The Village moved the circuit court for summary judgment, asserting, as relevant to our review, that the ordinance was invalid as preempted by state law. The circuit court granted the Village's motion for summary judgment and the court of appeals affirmed.

¶ 2. We conclude that the ordinance is invalid because it conflicts with, defeats the purpose of, and violates the spirit of the legislature's delegation of authority to the DNR to regulate high capacity wells in Wis. Stat. § 281.11 and § 281.12 (2007–08)[2] and its creation of a comprehensive permitting framework for high capacity wells in Wis. Stat. § 281.34 and § 281.35. Thus, the ordinance is preempted by state law.

¶ 3. Therefore, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶ 4. The ordinance, while applicable to any diversion of surface water out of the Lake Beulah Hydrologic Basin,[3] was adopted primarily in response to the Village

---

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[3] The ordinance defines the Lake Beulah Hydrologic Basin as "the geographic region or territory whose boundaries include

of East Troy's plans to construct a high capacity municipal well, Well No. 7. Initially, LBMD unsuccessfully petitioned for judicial review of the DNR's decision to issue the 2003 permit for Well No. 7.[4] While continuing with its appeal of that decision and a challenge to the DNR's subsequent 2005 permit for Well No. 7, LBMD chose to pursue other methods to ensure that Well No. 7 did not impact Lake Beulah.

¶ 5.   On December 11, 2006, LBMD adopted an ordinance that prohibits the diversion of water from the Lake Beulah Hydrologic Basin without a permit from LBMD.[5] To obtain a permit pursuant to the ordinance, the applicant is required to explain the purpose of the

all of the Lake Beulah Surface Water Drainage Basin and all of the Lake Beulah Groundwater Basin." The Lake Beulah Surface Water Drainage Basin includes "[t]he geographic region or territory whose boundaries include all those lands and waters on which water deposited at the ground surface would, if prevented from infiltrating into the soil, flow by gravity to a point where it would enter into Lake Beulah." The Lake Beulah Groundwater Basin includes "[t]he three dimensional region whose boundaries encompass that portion of the aquifer known variously as the shallow, unconsolidated, or sand and gravel aquifer, within which the groundwater, if it were unaffected by pumping or other artificial inducement, would flow into, beneath or within the Lake Beulah Surface Water Drainage Basin."

[4] For a detailed history of LBMD's legal challenges to the DNR's permits for Well No. 7, see our decision in the related case reviewing the DNR's decision to issue the 2005 permit for Well No. 7, *Lake Beulah Management District v. Department of Natural Resources (DNR)*, 2011 WI 54, ¶¶ 8–21, 335 Wis. 2d 47, 799 N.W.2d 73, and the court of appeals decision in this case, *Lake Beulah Management District v. Village of East Troy*, 329 Wis. 2d 641, ¶¶ 2–3.

[5] The ordinance provides that the following are prohibited acts:

95

proposed diversion and "include a thorough environmental study" emphasizing the potential impact of the diversion on Lake Beulah and its surrounding environment, including the groundwater aquifer.[6] The ordinance further provides that a permit may not be

It shall be unlawful and prohibited by this Ordinance for any person or entity to do any of the following unless such acts are authorized in advance by and performed in conformance with a valid permit issued by the District pursuant to this Ordinance:

A. Divert or transfer surface water out of the Lake Beulah Surface Water Drainage Basin.

B. Divert, transfer, or induce the diversion or transfer of groundwater out of the Lake Beulah Groundwater Basin.

E. Withdraw groundwater from within the Lake Beulah Groundwater Basin and then divert or transfer said water out of the Lake Beulah Groundwater Basin.

[6] The portion of the ordinance describing the permit process provides in relevant part:

No use or action may be initiated, undertaken or continued that would be in violation of this Ordinance except in accordance with a permit issued by the District. A request for a permit for such use or action must be submitted to the Board of Commissioners for approval. The petition, together with any documents or records that support the petition, must clearly state the grounds upon which the petitioner requests the permit including, at minimum, a concise statement of the purpose of the request, the annual volume of water to which the request applies and the number of years the petitioner seeks for the approval or permit to remain in effect. In addition, said petition must include a thorough environmental study of the proposed use or action with emphasis on the potential impacts of such use or action on the following: Lake Beulah; groundwater and surface water contributing to Lake Beulah; wetlands adjacent to Lake Beulah or any surface water tributary to Lake Beulah; private wells in the District; and groundwater supplying any private well in the District. Petitioner may request an opportunity to testify and present evidence at a hearing conducted by the Board of Commissioners. The permit shall be granted only upon the majority decision of the Board of Commissioners based upon the [prescribed] procedure[s].

granted "if the net effect would be adverse to Lake Beulah or the public health, comfort, convenience, and welfare of the District." Additionally, the ordinance does not allow LBMD to grant a permit for a diversion "unless a volume of water equal to at least 95% of the water actually diverted or transferred is returned to the Hydrologic Basin" in a manner that mitigates adverse effects.

¶ 6.    The Village began constructing Well No. 7 in 2006 after receiving the 2005 permit from the DNR. The Village has been operating Well No. 7 since August 1, 2008.

¶ 7.    The parties do not dispute that Well No. 7 is within the Lake Beulah Hydrologic Basin as that term is defined in the ordinance. However, shortly after LBMD enacted the ordinance, the Village informed LBMD that the Village believed that LBMD lacked the legal authority to promulgate the ordinance and, in any event, according to Wis. Stat. § 33.22(4),[7] LBMD could not exercise its powers in an incorporated municipality such as the Village without the municipality's consent.

¶ 8.    Given the Village's position, on July 22, 2008, LBMD sought a declaratory judgment in the Walworth County Circuit Court providing that the ordinance was valid and enforceable as to the Village. The Village moved for summary judgment arguing that, under Wis.

---

[7] Wisconsin Stat. § 33.22(4) provides in relevant part: "Districts shall not exercise the town sanitary district powers authorized under sub. (3) within the boundaries of an incorporated municipality unless the governing body of the municipality consents."

LBMD was originally a sanitary district encompassing the area around Lake Beulah, and in 1995 the Town of East Troy converted the sanitary district into a lake district, LBMD, pursuant to Wis. Stat. § 33.235(1m).

Stat. § 33.22, LBMD lacked the authority to enact an ordinance regulating the Village and also lacked the authority to exercise its powers extraterritorially. Further, the Village argued that the ordinance was preempted by state law. The Walworth County Circuit Court, the Honorable Robert J. Kennedy presiding, granted the Village's motion for summary judgment and declared the ordinance "void and unenforceable in that it conflicts with state law," and also "invalid as applied to the Village."

¶ 9. LBMD appealed, and the court of appeals affirmed on the basis that the ordinance is preempted by state law. The court of appeals noted that the legislature granted the DNR broad authority to regulate waters of the state in Wis. Stat. chs. 280 and 281. *Lake Beulah Mgmt. Dist. v. Vill. of E. Troy*, 2010 WI App 127, ¶¶ 12–13, 329 Wis. 2d 641, 791 N.W.2d 385. The legislature explicitly stated that its goal was "to create a 'comprehensive program under a single state agency for the enhancement of the quality management and protection of all waters of the state.' " *Id.,* ¶ 13 (quoting Wis. Stat. § 281.11). The court of appeals applied the test for preemption set forth in *DeRosso Landfill Co., Inc. v. City of Oak Creek*, 200 Wis. 2d 642, 651–52, 547 N.W.2d 770 (1996), and concluded that "the Ordinance logically conflicts with, defeats the purpose of, and violates the spirit of the legislature's delegation of authority to the DNR," and thus is preempted. *Lake Beulah Mgmt. Dist. v. Vill. of E. Troy*, 329 Wis. 2d 641, ¶ 17.

¶ 10. LBMD petitioned this court for review, which we granted. We review whether the ordinance is preempted by state law.[8]

---

[8] The parties also address LBMD's authority to enact the ordinance and enforce it as to the Village. Because we conclude

## II. ANALYSIS

¶ 11.   "The question of whether a statute preempts a municipal ordinance raises a question of law which we review independently, benefitting from the analyses of the circuit court and the court of appeals." *DeRosso,* 200 Wis. 2d at 652.

¶ 12.   LBMD's argument regarding preemption is related to the Village's argument in a related case before this court regarding LBMD's challenge to the 2005 permit for Well No. 7. *See Lake Beulah Mgmt. Dist. v. Dep't of Natural Res. (DNR),* 2011 WI 54, 335 Wis. 2d 47, 799 N.W.2d 73. In that case, the Village argued that where no formal environmental review or findings are required, the DNR lacked the authority to consider the impact of a proposed high capacity well for which a permit is required under Wis. Stat. § 281.34(2). *Id.,* ¶ 28. In this case, LBMD argues that if the DNR does not have the authority to consider the impact of a proposed well on Lake Beulah, then the ordinance cannot conflict with the DNR's regulatory authority for high capacity wells in Wis. Stat. ch. 281. Significantly, LBMD conceded in its briefs, and at oral argument, that if the DNR does have the authority to consider the impact of a proposed high capacity well on waters of the state such as Lake Beulah, then the ordinance conflicts with the state statute providing such authority, Wis. Stat. ch. 281.

¶ 13.   The Village argues that the statutory framework directing the DNR to regulate and issue permits for high capacity wells precludes conflicting local regulation. The Village asserts that the ordinance's permit-

---

that the ordinance is preempted by state law, we do not address the arguments regarding LBMD's authority.

ting framework, which imposes requirements on wells authorized by the statute and the DNR, conflicts with and contravenes the statute. For example, the Village notes that, according to its interpretation of the statute, the permitting framework requires environmental review only for three specific categories of wells with a capacity of between 100,000 and 2,000,000 gallons per day (gpd), and wells with a capacity of over 2,000,000 gpd, and the ordinance purports to require environmental review for wells when that is not required by the statute. The Village further argues that the 2005 permit for Well No. 7 provides a specific example of the ordinance's conflict with the statute because, while the DNR authorized Well No. 7, the ordinance purports to require an additional permit and would also prohibit the well as it currently operates because the Village does not return the water to Lake Beulah.

¶ 14. We addressed the question of the DNR's authority and duty to consider the potential harm to waters of the state when evaluating an application for a proposed high capacity well in a related case in which LBMD challenged the DNR's decision to issue the 2005 permit for Well No. 7. *Lake Beulah Mgmt. Dist. v. DNR,* 335 Wis. 2d 47, ¶¶ 1–5. In that case, we held that "the DNR has the authority and a general duty to consider whether a proposed high capacity well may harm waters of the state." *Id.,* ¶ 3 (footnote omitted). Given our holding in *Lake Beulah Management District v. DNR,* and despite LBMD's concession noted herein that its ordinance, based on our holding, conflicts with and is preempted by Wis. Stat. ch. 281, we feel it is appropriate to examine independently the issue. Is the ordinance preempted by the legislature's grant of authority to the DNR to regulate wells and manage and protect waters of the state pursuant to Wis. Stat. ch. 281?

¶ 15. Local regulation is preempted by state law when "(1) the legislature has expressly withdrawn the power of municipalities to act; (2) it logically conflicts with state legislation; (3) it defeats the purpose of state legislation; or (4) it violates the spirit of state legislation." *DeRosso,* 200 Wis. 2d at 651–52 (footnotes omitted). Examining the ordinance in light of the legislature's delegation of authority to the DNR to regulate wells, we conclude that it is preempted based on the second, third, and fourth prongs of the *DeRosso* test.

¶ 16. The ordinance logically conflicts with the legislature's framework directing the DNR to regulate high capacity wells and also granting the DNR the authority to manage waters of the state. The legislature has chosen the DNR to "serve as the central unit of state government to protect, maintain and improve the quality and management of the waters of the state, ground and surface, public and private." Wis. Stat. § 281.11. The legislature has further provided that the purpose of Wis. Stat. ch. 281 is "to organize a comprehensive program under a single state agency for the enhancement of the quality management and protection of all waters of the state." *Id.* The framework for the comprehensive program within which the DNR regulates high capacity wells is set forth in Wis. Stat. § 281.34 and § 281.35.

¶ 17. This case provides an example of how the ordinance runs counter to the state statute. The DNR has issued a permit to the Village to operate Well No. 7 pursuant to Wis. Stat. § 281.34(2). The ordinance purports to require an additional permit from LBMD, which would require the submission of information in addition to what the Village was required to submit to

the DNR, and would actually prohibit Well No. 7 from operating as it currently does, because the Village does not return the water to the Lake Beulah Hydrologic Basin.

¶ 18.  For the same reason, the ordinance frustrates the legislature's purpose in creating a comprehensive regulatory scheme under the DNR. As we have explained in a similar context, if a local ordinance prohibits what the DNR has authorized pursuant to the statutes, its rules, and its role as manager of water resources, that ordinance is preempted because it frustrates the purpose of the state law. *Wis. Envtl. Decade, Inc. v. Dep't of Natural Res.*, 85 Wis. 2d 518, 535–36, 271 N.W.2d 69 (1978) ("Allowing the City of Madison to prevent treatment which the DNR has authorized, and thereby frustrate the [DNR's] program of water resource management, defeats clear legislative purpose to establish the [DNR] as 'the central unit of state government' with 'general supervision and control over the waters of the state.' ").

¶ 19.  The permitting scheme that the ordinance imposes in addition to the comprehensive permitting scheme in Wis. Stat. § 281.34 and § 281.35 does not merely provide additional requirements, but as this case demonstrates, may prohibit the operation of a high capacity well that is authorized by the DNR under the statute. Where the legislature has "adopted a complex and comprehensive statutory structure," an ordinance that runs counter to that structure violates the spirit of the legislation and is preempted. *DeRosso,* 200 Wis. 2d at 652 n.8 (quoting *Anchor Sav. & Loan Ass'n v. Equal Opportunities Comm'n,* 120 Wis. 2d 391, 397, 355 N.W.2d 234 (1984)).

## III. CONCLUSION

¶ 20. We conclude that the ordinance is invalid because it conflicts with, defeats the purpose of, and violates the spirit of the legislature's delegation of authority to the DNR to regulate high capacity wells in Wis. Stat. § 281.11 and § 281.12 and its creation of a comprehensive permitting framework for high capacity wells in Wis. Stat. § 281.34 and § 281.35. Thus, the ordinance is preempted by state law.

¶ 21. Therefore, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.