SMITH v. DANIEL et al.    (No. 1360.)*

(Court of Civil Appeals of Texas. Beaumont.
Nov. 9, 1926. Rehearing Denied
Dec. 1, 1926.)

**1. Escrows ☞14(1) — Evidence held not to show that deed was fraudulently delivered, in violation of escrow agreement.**

Evidence *held* not to show that deed from plaintiff was fraudulently and surreptitiously delivered, in violation of escrow agreement, where there was never agreement by grantees that it should be placed in hands of grantor's agent for any purpose.

**2. Escrows ☞1—There must be agreement between parties as to terms on which delivery shall be made, to constitute escrow.**

There must be agreement between parties to deed on depositary and terms in which delivery to grantee shall be made, to constitute valid escrow.

**3. Escrows ☞3—Deed is not in escrow while deposited with one of parties or his agent.**

Deed is not in escrow while deposited with one of parties, his agent, or attorney.

**4. Principal and agent ☞23(1)—Evidence held to show delivery of deed by grantor's agent, acting as such.**

Evidence *held* to show that when deed was delivered to attorney for grantees, party making delivery acted as grantor's agent, and delivery was binding on grantor.

**5. Deeds ☞208(6)—Evidence held to show acceptance of deed by grantees.**

In trespass to try title, evidence *held* to show delivery of deed by plaintiff's agent to defendant's agent, acting as such, and acceptance by grantees.

Appeal from District Court, Liberty County; J. M. Combs, Judge.

Trespass to try title by R. W. E. Smith against M. P. Daniel and others. From judgment for defendants E. B. Pickett, Jr., and C. H. Cain, on their cross-action, plaintiff appeals. Affirmed.

W. D. Gordon, of Beaumont, and H. E. Marshall, of Houston, for appellant.

T. L. Foster, of Dallas, C. A. Toler, of Beaumont, and E. B. Pickett, Jr., C. H. Cain, and P. C. Matthews, all of Liberty, for appellees.

HIGHTOWER, C. J. We take from appellant's brief the following statement showing the nature and result of this suit., This was an action of trespass to try title, instituted on the 29th day of January, 1925, by the appellant, R. W. E. Smith, against appellees, M. P. Daniel, Mrs. Carrie Thornton, E. B. Pickett, Jr., H. Mecom, C. H. Cain, the Sun Oil Company, the Gulf Production Company, F. B. Fuson, and H. O. Compton, to recover of the appellees one-eleventh interest in a tract of 400 acres of land in the M. G. White league, in Liberty county, Tex. The interest sued for is further described as the same land conveyed by Isaiah Moore and wife, Teresa Moore, to R. W. E. Smith, by a deed dated the 6th day of March, 1917, and recorded in volume 64, page 236, of the Deed Records of Liberty county, Tex.

In paragraph 4 of his petition, appellant asked for the cancellation of a purported deed, dated April 21, 1919, as follows:

"Plaintiff further alleges that the defendants, as plaintiff is informed and believes and so avers, are asserting claim of right to the plaintiff's land under and by virtue of a purported deed, dated April 21, 1919, and filed in Liberty County Deed Records January 13, 1923, and recorded in volume 116, page 335, of said deed records, which deed, as a matter of fact, was never executed and delivered by the plaintiff, nor was the same ever authorized to be delivered by the plaintiff actually or constructively.

"On the contrary, plaintiff alleges that an instrument of such purport had been placed in escrow upon certain conditions, unnecessary here to recite, which conditions were never complied with, which deed thus in escrow was surreptitiously and fraudulently taken out of said escrow without the knowledge or consent of plaintiff in violation of the conditions under which the same was escrowed, and thus placed upon record with the intent thus and thereby to defraud the plaintiff of his vested right, interest, and title in said land through the color of said escrowed instrument, and through the unauthorized act of fraud and deceit thus practiced upon the plaintiff, that in truth and in fact no title to the land here sued for was passed or was intended to pass through their act in causing said instrument, in violation of the terms in which it was originally escrowed, and that its record constitutes a cloud upon the plaintiff's title to said land, which the plaintiff is entitled to have cured and removed, as well as for adjudication adversely to the defendants all claims of right thereto purporting to be derived under and by virtue of said instrument."

The deed upon which appellant's attack is made by the above-quoted special pleading is a special warranty deed that was executed by him to Isaiah Moore and his wife, Teresa Moore, April 21, 1919, conveying to the named

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction February 2, 1927.

grantees, Moore and wife, the land in controversy in this suit.

The defendants M. P. Daniel, Mrs. Carrie Thornton, H. O. Compton, E. B. Pickett, Jr., and C. H. Cain answered by general denials and pleas of not guilty. In addition, Pickett and Cain filed a cross-action against appellant for recovery of the land. The defendants Gulf Production Company and F. B. Fuson disclaimed. The Sun Oil Company answered by plea of not guilty, general denial, and the statutes of limitation of three, five, and ten years.

The case was tried with a jury, but, upon conclusion of the evidence, the verdict was peremptorily instructed against appellant as to all the defendants, and in favor of defendants Pickett and Cain upon their cross-action, and judgment was accordingly entered, from which this appeal is prosecuted.

It is admitted that appellant and appellees claim title to the land in controversy from Isaiah Moore and his wife, Teresa Moore, as the common source of title, and it is apparent from the record that unless appellant was entitled to have canceled the deed to Isaiah and Teresa Moore, dated April 21, 1919, on the ground alleged by him that it was surreptitiously and fraudulently taken from escrow and fraudulently delivered without appellant's authority or consent, then the action of the trial court in peremptorily instructing the verdict against appellant was correct, and the judgment must be affirmed. As we find them in the record, the following are the material facts upon which this judgment rests:

On the 6th day of March, 1917, Isaiah Moore and his wife, Teresa Moore, by deed duly executed and acknowledged, conveyed the land in controversy to appellant for the recited consideration of $2,000. That deed recites that $200 of the consideration was paid in cash to Moore and wife, and the balance of the purchase money was evidenced by three promissory vendor's lien notes executed by appellant in favor of Moore and wife in the sum of $600 each, bearing interest at the rate of 8 per cent. per annum, and made payable one, two, and three years after date. In that transaction, the vendor's lien was expressly retained, both in the deed and in the notes.

The record shows without dispute that appellant has never paid or offered to pay to Moore and wife or any one else either of the notes executed by him, as just shown.

On April 11, 1919, M. P. Daniel, who was then residing at Liberty, Tex., wrote a letter to appellant who was then at Hamilton, Tex., in which letter Daniel, among other things, called appellant's attention to the fact that he had never paid either of the three notes for $600 each that they held against him as a part of the consideration for their conveyance of the land in controversy to him, and Daniel stated in that letter, in substance, that Moore and wife (negroes) were anxious to get their title to the land clear and straightened out.

288 S.W.—34

Daniel further stated, in substance, in that letter, that he thought that Moore and wife would be willing to cancel and surrender the vendor's lien notes they held against appellant if appellant would execute to them a quitclaim deed to the land they had conveyed him by their deed of March 6, 1917, and Daniel further stated, in substance, in that letter, that if appellant was willing to make Moore and wife a quitclaim deed to the land, in consideration of the surrender by them of the vendor's lien notes held against appellant, he (Daniel) would prepare and send to appellant such a deed for execution.

In answer to Daniel's letter, appellant on April 16, 1919, wrote Daniel, in substance, that he was willing to reconvey to Isaiah and Teresa Moore the land in controversy in consideration of their surrendering the vendor's lien notes they held against him, and told Daniel that, if he would prepare such a deed and send to him, he would execute the same. He further stated, in substance, in this letter to Daniel, that he was anxious to be discharged from the obligation of the notes held by Moore and wife against him, and also, in substance, that he thought that they were entitled to have their title to the land cleared.

Immediately upon receipt by Daniel of appellant's letter next above mentioned, Daniel prepared and mailed to appellant at Hamilton, Tex., a special warranty deed for his execution, conveying the land in question back to Isaiah and Teresa Moore. That deed was duly executed and acknowledged by appellant and promptly returned by mail to Daniel at Liberty, Tex. The consideration for this deed, as therein recited, was $1 in cash and the cancellation and surrender by Moore and wife of the three vendor's lien notes that they held against appellant. Upon receipt of this deed, Daniel, as the agent of appellant, offered to deliver it to Moore and wife if they would surrender the three vendor's lien notes held against appellant above mentioned, and would also pay him $25 in money. Moore and wife were willing at the time to accept the deed, as written by appellant, and to cancel and surrender to Daniel the three vendor's lien notes that they held against appellant, but they were not willing and were not able to pay Daniel the $25 in money, as requested by him, and for that reason Daniel did not deliver the deed to Moore and wife, but kept the same in his possession for, perhaps, more than a year and a half after that time.

On May 21, 1920, Isaiah Moore and Teresa Moore, by deed duly executed and acknowledged, conveyed the land in controversy to E. B. Pickett, Jr., and that deed was duly filed for record on the same day. While in this deed Pickett was named as the only grantee, as a matter of fact Pickett bought the land for himself and C. H. Cain, jointly.

When Daniel learned that Pickett had bought the land from Moore and wife, he offered to deliver to Pickett the deed that was

executed by appellant in favor of Moore and wife on April 21, 1919, which deed Daniel still had in his possession, if Pickett would cancel and surrender the three vendor's lien notes that appellant had executed in favor of Moore and wife, and if Pickett would also pay to him (Daniel) $25 in money. Pickett was willing to accept the deed and cancel and surrender the three vendor's lien notes to Daniel, but he declined to pay Daniel $25 in money, or any other amount, and for that reason Daniel did not, at that time, deliver appellant's deed to Pickett. Later, however (the record does not show definitely when), Daniel, who still held the deed from appellant to Moore and wife above mentioned, went to Pickett and offered to deliver to him appellant's deed to the Moores in consideration of the surrender to him by Pickett, as attorney for Moore and wife, the three vendor's lien notes, and then Pickett agreed to accept the deed from appellant, reconveying the land in controversy to Moore and wife, and to surrender to Daniel the three vendor's lien notes executed by appellant to Moore and wife, which were then in Pickett's possession, and thereupon Daniel did deliver the deed to Pickett, with the understanding that Pickett would deliver to him said three vendor's lien notes.

Whether or not Pickett ever delivered to Daniel the three vendor's lien notes, executed by appellant to Moore and wife, this record does not clearly show. It is clearly shown that Pickett did not deliver these vendor's lien notes to Daniel at the very time Daniel delivered to him the deed from appellant to Moore and wife. Daniel testified, in substance, that he delivered appellant's deed to Pickett, as attorney for Moore and wife, and that Pickett promised to surrender and deliver to him the three vendor's lien notes executed by appellant to Moore and wife, but that he could not say positively that Pickett ever delivered to him, either in person or by mail, these vendor's lien notes, but that he had a faint recollection that Pickett did deliver the three notes to him by mail. He further testified, in substance, that if Pickett did deliver the notes to him, he kept them among his papers at Liberty, and that when he moved from Liberty to Fort Worth, which was in the month of August, 1923, he destroyed these three notes by burning them, as he did other papers at that time. Daniel further testified, in substance, that he did not send these vendor's lien notes to appellant. He was certain on that point.

The defendant Pickett testified, in substance, that he was unable to say just when Daniel delivered to him the deed from appellant to Moore and wife, of date April 21, 1919, and that he was unable to state positively whether or not he ever delivered to Daniel the three vendor's lien notes executed by appellant to Moore and wife, but stated that he had been unable to find these notes and could not say what had become of them. He fur-

ther testified, in substance, that he accepted the deed from Daniel, as the agent of appellant, and in doing so acted as the attorney of Moore and wife, and also for himself and Cain. He further testified, in substance, that, at the time he accepted the deed from Daniel, he was not aware of any instructions that appellant had given Daniel with reference to the delivery of the deed, but acted alone upon the recitations in the deed that it was executed for the consideration of $1 in cash and the cancellation and surrender of the three vendor's lien notes that Moore and wife held against appellant.

Pickett did not file for record the deed from appellant to Moore and wife reconveying to them the property in controversy at the time of its delivery to him by Daniel, and it was not filed for record until January 13, 1923.

On November 5, 1918, Isaiah and Teresa Moore filed a suit in the district court of Liberty county against appellant on the three vendor's lien notes executed by him as a part of the purchase money for the land in controversy, and which, as we have shown, was conveyed to him by Moore and wife on March 6, 1917. These notes recited that, in the event of failure on appellant's part to pay either of them when due, then Moore and wife might declare all of them due, and, when that suit was filed, the first note was long past due. That suit was pending on the docket at the time Daniel delivered to Pickett appellant's deed of April 21, 1919, reconveying to Moore and wife the land in controversy, and Pickett was the attorney for Moore and wife in that suit. That suit was not dismissed when appellant's said deed was delivered to Pickett, which, as explained by Pickett, was an oversight, but that suit was dismissed by Moore and wife in August, 1923, the entry on the trial docket reciting that it was settled and dismissed. On January 13, 1923, Pickett conveyed to M. P. Daniel, who was then still residing at Liberty, Tex., an undivided three acres of the land in controversy; and, on the same day, the deed from appellant to Moore and wife, reconveying to them the land in controversy, which had been delivered by Daniel to Pickett, was filed for record. Thereafter, Daniel conveyed certain interests in the three acres conveyed to him by Pickett to some of the other appellees in this case, and all of them, other than Daniel and Pickett and Cain, hold whatever rights they have in this land under conveyances from Pickett and Daniel.

The undisputed evidence in this record, as we read it, shows that at the time appellant sent to Daniel the deed that was executed by himself to Isaiah and Teresa Moore, on April 21, 1919, he (Daniel) was the agent of appellant, and that whatever he was to do with reference to the delivery of the deed, he was acting as the agent of appellant. At that time Moore and wife never knew that appellant had executed to them the deed that he sent

to Daniel for delivery to them, and they never knew that appellant had any such intention. There was no agreement on their part with appellant or any one else that appellant should execute this deed and send it to Daniel for delivery to them, nor did Pickett, as their attorney, at that time have such agreement.

Appellant testified as a witness in this case, and the substance of his evidence was that his purpose of executing the deed to Moore and wife reconveying to them the land in controversy, as we have shown, was to get released from his obligation on the three vendor's lien notes held by Moore and wife against him, as above stated, and that he had not authorized Daniel to demand of Moore and wife any sum of money, in addition to a surrender by them of the notes, as a consideration for the deed. He further testified, in substance, that Daniel was his own agent for the delivery of this deed to Moore and wife, and that whatever Daniel was to do in delivering the deed was a matter between himself and Daniel. He further testified, however, that his instructions to Daniel were that the deed should not be delivered until the three vendor's lien notes, above mentioned, held by Moore and wife, were surrendered and delivered to Daniel as his agent, to be returned to him, and that, as a matter of fact, these notes were never canceled and surrendered to Daniel and returned to him.

While we have not stated in detail all the evidence of all the witnesses bearing upon appellant's contention that his deed to Moore and wife, sought by him to be canceled in this suit, was never delivered in contemplation of law for the reason that it was fraudulently and surreptitiously taken from escrow, still we think that we have stated all that has any probative force or materiality.

Now appellant relies for reversal of this judgment upon two propositions. The first is, in substance, that the delivery by Daniel to Pickett of the deed executed by appellant on April 21, 1919, reconveying to Isaiah and Teresa Moore the land in controversy, did not have the effect to pass the title to the land for the reason that it was fraudulently and surreptitiously and wrongfully taken from escrow, where appellant had placed it, and delivered with the fraudulent purpose of divesting appellant of title to the land. The next proposition is, in substance, that the evidence adduced upon the trial showed without dispute that Moore and wife never accepted the deed, but, on the contrary, showed that they expressly refused to accept it. We shall take up these propositions in their order.

[1] As to the first proposition, we are of the opinion that the evidence in this case wholly fails to sustain appellant's attack upon the deed executed by him to Moore and wife, on the ground that it was fraudulently and surreptitiously taken from escrow and delivered in violation of the escrow agreement. That is the only attack that appellant makes up-on this deed as to its delivery, as shown by his special plea. The undisputed evidence, as we find it in this record, shows that there was never any agreement by Isaiah and Teresa Moore, or by any one acting for them, that the deed attacked by appellant should be placed in the hands of Daniel for any purpose or under any conditions whatever. As we have stated above, neither Moore and wife, nor any one acting for them, knew anything about the execution of this deed or its contemplated delivery by Daniel. Without such agreement on the part of Moore and wife, or some one acting as their agent in the matter, there could be no basis for the contention that the deed was in escrow while in the hands of Daniel. He was the agent of appellant, as shown by appellant's own testimony,. and whatever he was to do with reference to the delivery of the deed was a matter between him and appellant exclusively. As said in Simpson v. Green, 231 S. W. 378, by our Commission of Appeals, and approved by our Supreme Court:

"The authorities hold that a valid contract of sale is necessary to render the deposit of a deed in pursuance of the same a genuine escrow."

[2, 3] It is unquestionably the law that there must be an agreement between the parties to a deed upon the depositary and the terms upon which delivery shall be made to the grantee. A deed is not in escrow while deposited with one of the parties, nor with his agent or attorney. Tyler Building & Loan Association v. Beard, 106 Tex. 554, 171 S. W. 1122, 1200; 16 Cyc. p. 571, 573.

[4] But if it could be properly held upon the facts of this record that the deed here attacked and sought to be canceled by appellant was in escrow, as he claims, still the evidence wholly fails to establish his contention that the deed was fraudulently and surreptitiously taken from escrow and fraudulently delivered. We have read this record very carefully, and we fail to find anywhere in it any evidence indicating fraud on the part of any one in the delivery and acceptance of the deed executed by appellant and here attacked by him. It is our conclusion that when Daniel, as appellant's agent, delivered to Pickett, as attorney for Moore and wife, the deed attacked by appellant, he was acting as the duly authorized agent of appellant, and that his act in delivering the deed to Pickett, as attorney for Moore and wife, was just as binding upon appellant as if he had delivered it himself.

[5] As to appellant's contention that the evidence in this case shows that there was no acceptance by the grantees of the attached deed, we have to say that there is not a scintilla of evidence, in our opinion, that sustains this contention. It is true, as we have stated above, that, when Daniel first tendered the deed to Moore and wife, he coupled with the offer to deliver them the deed a demand

which he was not authorized to make, that is, he requested, before delivering the deed, that they pay him $25 in money, in addition to surrendering to him the notes they held against appellant, and they were unable to pay him that amount of money, and, for that reason, they could not accept the deed. Daniel's evidence in this case shows conclusively that Moore and wife never, at any time, declined to accept this deed, and he said that the only reason he did not deliver it to them was that they did not pay him the $25. He made the same demand of Pickett, which was refused, but afterwards, as we have shown, he agreed to deliver the deed to Pickett upon surrender of the vendor's lien notes, and he did do so and stated that he delivered the deed to Pickett, as attorney for the Moores, and that Pickett accepted the deed.

There is nothing in this case in favor of appellant that appeals to a court of equity. He agreed to pay Moore and wife (negroes) $2,000 for the land in controversy, and did pay them $200 at the time he took a deed from them, but he admits that he never paid either of the vendor's lien notes, aggregating $1,800, that he executed in their favor at the time he took his deed, nor has he ever offered, so far as this record shows, to pay any portion of the balance of the consideration that he was to pay for this land. He admitted upon the witness stand that his notes were barred by limitation.

Finding no reversible error in this record, the judgment is ordered affirmed.