

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00320-CV

———————————————

RAY FISCHER AND CORPORATE TAX MANAGEMENT, INC. N/K/A RY
FISCHER & ASSOCIATES, INC., Appellants

V.

MARK BOOZER, JERROD RAYMOND, AND CTMI, LLC, Appellees

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-284212-16

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion on Rehearing by Justice Womack

**MEMORANDUM OPINION ON REHEARING**

On October 7, 2021, we issued a memorandum opinion and judgment reversing the trial court's final judgment in favor of Appellees Mark Boozer, Jerrod Raymond, and CTMI, LLC (the CTMI Parties), and we rendered judgment in favor of Appellants Ray Fischer and Corporate Tax Management, Inc. n/k/a RY Fischer & Associates, Inc. (the Fischer Parties). The Fischer Parties filed a motion for rehearing asking that we revise our judgment to award them pre- and post-judgment interest. After reviewing the motion for rehearing, the response, and the reply, we grant the motion for rehearing in part, withdraw our October 7, 2021 memorandum opinion and judgment, and substitute the following.

## I. INTRODUCTION

In a prior lawsuit, the Fischer Parties entered into a settlement agreement (the Settlement Agreement) in open court with the CTMI Parties. As part of the Settlement Agreement, the parties agreed that one of the claims in the lawsuit would proceed to trial and that CTMI would place certain funds relating to that claim in an account controlled by T. Wesley Holmes, attorney for two of the CTMI Parties, pending resolution of the case. The parties further agreed that if Fischer was ultimately successful on the claim, he would receive payment of the funds. While the Fischer Parties ultimately prevailed on the claim, Fischer did not receive payment because Holmes absconded with the money that CTMI had placed in the account.

In this lawsuit, the CTMI Parties sought a declaration that they had fulfilled their obligations under the Settlement Agreement and owed no further liability to the Fischer Parties under the Settlement Agreement, and the Fischer Parties brought a breach-of-contract claim against the CTMI Parties for breach of the Settlement Agreement. The Fischer Parties filed a motion to transfer venue, which was denied by the trial court. The parties also filed dueling motions for summary judgment, and the trial court ultimately ruled in the CTMI Parties' favor. In their first issue, the Fischer Parties argue that the trial court abused its discretion by denying the motion to transfer venue, and in their second issue, the Fischer Parties contend that the trial court erred by entering final judgment in the CTMI Parties' favor. We will sustain the Fischer Parties' second issue and reverse and render in part and remand in part.

## II. BACKGROUND

### A. Fischer Sells His Business, a Lawsuit Arises from the Sale, and the Parties Enter into the Settlement Agreement.

In 2007, Fischer owned Corporate Tax Management, Inc.,[1] a tax-consulting business.[2] Sometime that year, Fischer began negotiations to sell the assets of the business to Boozer and Raymond. Boozer and Raymond created a business, CTMI, LLC, to receive the assets and operate the business, and in 2007, the parties executed

---

[1]Corporate Tax Management, Inc. (an appellant in this case) should not be confused with CTMI, LLC (an appellee in this case).

[2]Many of the facts relating to this case are set out in *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231 (Tex. 2016), a case we will reference later in our opinion.

3

a written asset-purchase agreement by which CTMI purchased the business from Fischer.

In 2008, a dispute arose between the Fischer Parties and the CTMI Parties regarding payments made under the asset-purchase agreement, and the parties filed claims against each other in the 192nd District Court of Dallas County. At the 2011 trial of that case, the parties entered into the Settlement Agreement in open court. Through the Settlement Agreement, the parties agreed to a judgment awarding Fischer $1.7 million; the settlement, however, specifically excluded one of CTMI's claims relating to a prior agreement between the parties that we will refer to as the "2010 Adjustment."[3] The parties agreed to sever CTMI's claim that the 2010 Adjustment was unenforceable, agreed that CTMI would place funds relating to the 2010 Adjustment in a CTMI account controlled by Holmes while the parties litigated CTMI's claim regarding the 2010 Adjustment, and agreed that Fischer would receive those funds if he was ultimately successful in the litigation.

Because it is key to our analysis, we will set forth pertinent portions of the Settlement Agreement concerning CTMI's obligation to pay the 2010 Adjustment. Those portions read:

---

[3]The 2010 Adjustment involved an agreement that CTMI would pay Fischer an adjusted "earn out payment" from revenues received in 2011 on projects for which Fischer had performed work in 2010. CTMI maintained that the 2010 Adjustment constituted an unenforceable agreement to agree.

4

[Mr. Cunningham[4]]: All right.  Upon – thereafter, upon receipt of the revenue [relating to the 2010 Adjustment], 15 percent of all that revenue received on those projects listed will, upon receipt, be paid into an interest bearing escrow account.

[Mr. Shamoun]: Either, either in Mr. Holmes' escrow account or my escrow account, depending on what Mr. Holmes and I agree in that regard.

Is that fair, Mr. Holmes?

[Mr. Holmes]: That is correct.

[Mr. Shamoun]: Okay.

[Mr. Holmes]: And I just want to say it would probably be a new account that we would have control of so it wouldn't be comingled with other client trust funds.

[Mr. Shamoun]: Well, I think it has to be a separate account, because I'm not going to be paying income tax on the interest that accrues on it.

[Mr. Holmes]: I agree.

[Mr. Shamoun]: And so it won't be under my tax ID number.

[Court]: All right.  Let's move on.

[Mr. Shamoun]: Well, I need to know whose tax ID number it needs to be opened under, because then that's going to be the reporting requirement for the IRS.

Who would you recommend?

_____

[4]During the 2011 trial, the Fischer Parties were represented by Jonathan Cunningham and Gregory Shamoun, CTMI was represented by Andrew Turner, and Boozer and Raymond were represented by Holmes.

[Mr. Holmes]: Your Honor, I don't know exactly how to handle that.

[Court]: Whoever's going to be benefitting from the numbers. I would assume ya'll [sic] will be.

[Mr. Holmes]: Correct. Probably what we'll do is have it be a CTMI account, but have it be controlled by me.

[Mr. Shamoun]: That's fair. I agree with that.

[Mr. Holmes]: Then they will pay the taxes on it, but I'm on the hook.

[Mr. Shamoun]: I agree with that. Okay.

[Mr. Turner]: I think [I] like that one too because I wasn't on the hook.

[Mr. Shamoun]: But I want to make absolutely sure, guys, that we understand how when that money comes in, 15 percent of the gross receipts is put into that account.

Right Mr. Holmes?

[Mr. Holmes]: Correct.

[Mr. Shamoun]: And that money is not going to be used to pay Mr. Fischer, if [the revenue relating to the 2010 Adjustment] comes in, I don't want to use that 15 percent. That comes off the top, irrespective of anything do you . . . understand?

[Mr. Holmes]: That's correct.

[Mr. Shamoun]: Is that what we agreed to?

[Mr. Holmes]: That's correct.

[Mr. Shamoun]: Thank you. Go ahead.

[Mr. Cunningham]: Then upon the exhaustion of all appellate rights by any party that relate to an appeal of the declar[a]tory judgment, which will be severed from the causes of action in this suit – in other words, separate from the agreed judgment the Court will sever the declaratory judgment action the defendants have asked for regarding the issue of agreement to agree, and the Judge will issue a separate declar[a]tory judgment on that. Okay?

Which will also award fees regarding that declar[a]tory judgment, which will incur trial fees and appellate fees.

So then, upon the exhaustion of all appellate rights relating to that declar[a]tory judgment, if the declar[a]tory judgment of the trial Court is upheld, then Ray Fischer will receive payment of the 15 percent gross revenue that is being held in escrow. And 15 per – I mean, he will receive – he will be distributed that 15 percent of the gross revenue that was being held in escrow, okay. 100 percent of that.

. . . .

[Mr. Shamoun]: That concludes our settlement. I [w]ould like to – I would like to call my client.

[Mr. Cunningham]: Let me be sure and be clear on the record that what is – it's agreed by the parties that what is being entered onto the record in this Rule 11 setting, does not contemplate the parties sitting down and executing any further settlement agreement to be written or agreed upon.

This is to be used as the settlement agreement, this transcript.

[Mr. Shamoun]: Is that correct?

[Mr. Cunningham]: For all purposes.

[Mr. Holmes]: Yes.

[Mr. Turner]: Yes.

[Mr. Shamoun]: Is that correct, Mr. Turner?

7

[Mr. Turner]: Agreed.[5]

## B. The 192nd District Court Enters a Judgment Relating to the 2010 Adjustment, the Dallas Court of Appeals Reverses, and the Texas Supreme Court Reverses.

In June 2011, the 192nd District Court of Dallas County entered judgment in the Fischer Parties' favor regarding the 2010 Adjustment, declaring that the 2010 Adjustment was not an unenforceable agreement to agree as CTMI had claimed. CTMI appealed that judgment to the Dallas Court of Appeals, and in August 2013, the Dallas Court of Appeals reversed the 192nd District Court, holding that "the 2010 Adjustment was . . . an unenforceable agreement to agree." *CTMI, LLC v. Fischer*, 479 S.W.3d 279, 283 (Tex. App.—Dallas 2013), *rev'd*, 479 S.W.3d 231 (Tex. 2016). In January 2016, the Texas Supreme Court reversed the Dallas Court of Appeals, holding that "the 2010 [A]djustment [was] not an unenforceable agreement to agree." *Fischer*, 479 S.W.3d at 244. The Texas Supreme Court's mandate issued on February 19, 2016.

## C. Holmes Sets Up a CTMI Bank Account, CTMI Deposits Funds into that Account, and Holmes Absconds with the Funds.

In October 2011—while the 192nd District Court's final judgment was being appealed to the Dallas Court of Appeals—Holmes opened a Regions Bank account.

---

[5]Fischer then testified that he approved of the Settlement Agreement on behalf of himself and Corporate Tax Management, Inc. Raymond likewise testified that he approved of the Settlement Agreement, and Boozer testified that he approved of the Settlement Agreement on behalf of himself and CTMI.

CTMI was listed as the owner of the account, although the address listed for CTMI was the address of Holmes's law firm. According to a declaration made by Raymond, one of CTMI's owners, "[n]either CTMI nor any of its principals, agents or employees had any control" over the bank account, and Holmes was the "sole authorized signatory" on the account. Bank statements relating to the account were sent to "Thomas Wesley Holmes FBO CTMI LLC" at the address of Holmes's law firm, and Regions Bank likewise issued 1099-INT forms to "Thomas Wesley Holmes FBO CTMI LLC" at the address of Holmes's law firm.

Between October 2011 and December 2012—while the appeal was still pending in the Dallas Court of Appeals—CTMI deposited funds totaling $990,175.66 into the Regions Bank account. Between June 2014 and December 2015—while the case was still pending before the Texas Supreme Court—Holmes absconded with the funds.

**D. The CTMI Parties File the Present Lawsuit, the Trial Court Denies the Fischer Parties' Motion to Transfer Venue, the Fischer Parties File a Counterclaim for Breach of Contract, and the Trial Court Enters a Final Judgment in the CTMI Parties' Favor.**

According to Raymond, the CTMI Parties discovered that Holmes had absconded with the funds sometime in early March 2016. A few days later, the CTMI Parties filed the present lawsuit in the 48th District Court of Tarrant County. The CTMI Parties sought a declaration that they had fulfilled their obligations under the Settlement Agreement and owed no further liability to the Fischer Parties under the

9

Settlement Agreement.[6] The Fischer Parties filed a motion to transfer venue to Dallas County, and the trial court denied the motion. The Fischer Parties also filed a counterclaim against the CTMI Parties for, among other things, breach of the Settlement Agreement.

The Fischer Parties sought summary judgment on their breach-of-contract counterclaim, arguing that they had not received the funds due to them under the Settlement Agreement and had been damaged in the amount of $990,175.66. The trial court denied the Fischer Parties' motion for summary judgment.

The CTMI Parties filed three motions for summary judgment. In their first motion, they contended that they had fulfilled all their obligations under the Settlement Agreement and owed no further liability to the Fischer Parties. The trial court granted the CTMI Parties' first motion for summary judgment in part, finding that they had accurately calculated the amounts due under the 2010 Adjustment and had timely deposited payments totaling $990,175.66 into the Regions Bank account. The CTMI Parties later filed their second motion for summary judgment, arguing that because the Regions Bank account constituted an "escrow account," they were entitled to summary judgment on the Fischer Parties' breach-of-contract counterclaim and entitled to summary judgment on certain affirmative defenses raised by the

---

[6]The CTMI Parties (and later the Fischer Parties) also brought claims against Holmes and the law firm that had represented CTMI in the 192nd District Court. Those claims were later severed into a new case.

Fischer Parties. The trial court granted the CTMI Parties' second motion for summary judgment, finding, among other things, that the Settlement Agreement "created an escrow account." The CTMI Parties later filed their third motion for summary judgment, contending that in light of the trial court's previous summary-judgment rulings, they were entitled to a declaration that they had fulfilled their obligations under the Settlement Agreement and owed no further liability to the Fischer Parties under the Settlement Agreement. The trial court granted the CTMI Parties' third motion for summary judgment.

The trial court later incorporated its summary-judgment rulings into a final judgment. In the final judgment, the trial court declared that "[t]he Settlement Agreement created an escrow account" and that "the CTMI Parties have no further liability to the Fischer Parties . . . as it relates to any legally enforceable obligations imposed upon the CTMI Parties by [the] Settlement Agreement, the CTMI Parties having performed and met all of their obligations under the Settlement Agreement." The trial court also awarded attorney's fees in accordance with a Rule 11 agreement made by the parties. This appeal ensued.

## III. DISCUSSION

### A. We Will Address the Fischer Parties' Second Issue First Because It Provides the Greatest Relief.

In their first issue, the Fischer Parties argue that the trial court erred by denying their motion to transfer venue. As to that issue, the Fischer Parties ask that we

11

reverse and remand the case with instructions to transfer it to Dallas County. In their second issue, the Fischer Parties argue that the trial court erred by granting summary judgment in the CTMI Parties' favor. As to that issue, the Fischer Parties ask that we reverse and render judgment in their favor.

When a party presents multiple grounds for reversal of a judgment on appeal, the appellate court should first address those grounds that would afford the party the greatest relief. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000); *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999). Therefore, we will address the Fischer Parties' second issue first. *See CMH Homes*, 15 S.W.3d at 99 (declining to "reach the venue question, which if sustained would only result in a remand," when a different issue entitled the appellant to rendition of judgment in its favor); *Bradleys' Elec.*, 995 S.W.2d at 677 (holding that court of appeals erred by remanding case on venue grounds when the appellant had also raised an issue upon which the court of appeals could have rendered judgment).

## B. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We should then render the judgment that the trial court should have

rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

## C. Did the Settlement Agreement Create an Escrow Agreement?

Through this appeal, we must construe whether the Settlement Agreement created an escrow agreement. The CTMI Parties argued at the trial level and now argue on appeal that the Settlement Agreement created a "valid [e]scrow [a]greement." According to the CTMI Parties, because the Settlement Agreement created an escrow agreement, their obligations and liability under the Settlement Agreement ceased when they deposited the $990,175.66 into the Regions Bank account. *See Norman v. Wilson*, 41 S.W.2d 331, 332 (Tex. App.—Austin 1931, writ ref'd) ("When the bank accepted by written indorsement thereon the escrow agreement deposited with it, and which charged it with certain duties, it became the depository and trustee to carry out its terms, and if it improperly did so, would be liable to those injured thereby."). In contrast, the Fischer Parties argued at the trial level and now argue on appeal that the Settlement Agreement did not create an escrow agreement. According to the Fischer Parties, because the Settlement Agreement did not create an escrow agreement, the CTMI Parties were not relieved of their obligations under the Settlement Agreement by merely depositing the $990,175.66 in the Regions Bank account, and as the Fischer Parties did not receive the $990,175.66, the CTMI Parties breached the Settlement Agreement.

13

### 1. The Law

All parties agree that the Settlement Agreement was a Rule 11 agreement. *See* Tex. R. Civ. P. 11. As such, it was enforceable as a contract. *Lane–Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase, N.A.*, 468 S.W.3d 200, 204 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

"We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Dist., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). When construing a contract, our primary concern is to ascertain the true intent of the parties as expressed in their contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.). We must examine and consider the entire contract to harmonize and give effect to all provisions so that none are rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999); *NP Anderson*, 230 S.W.3d at 463. We presume that parties to a contract intend every clause to have some effect, and we give terms used in a contract their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt.,*

*L.L.P.*, 301 S.W.3d 787, 794 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g).

> Under Texas law, an escrow agreement is
>
> a written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promisor, or obligor, or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee.

*Campbell v. Barber*, 272 S.W.2d 750, 753 (Tex. App.—Fort Worth 1954, writ ref'd n.r.e.); *see Escrow*, Black's Law Dictionary (11th ed. 2019) (defining "escrow" as a "legal document or property delivered by a promisor to a third party to be held by the third party for a given amount of time or until the occurrence of a condition, at which time the third party is to hand over the document or property to the promisee").

Cases defining escrow agreements highlight that escrow involves deposits with neutral third parties who are strangers to the contract. *See, e.g.*, *Williams v. Land Title Co. of Dall.*, No. 05-96-00039-CV, 1997 WL 196345, at *5 (Tex. App.—Dallas Apr. 23, 1997, no pet.) (not designated for publication) ("To create an escrow, the parties to an underlying transaction must deposit instruments or funds with a neutral third party."); *Bell v. Safeco Title Ins. Co.*, 830 S.W.2d 157, 160 (Tex. App.—Dallas 1992, writ denied) (explaining that for escrow agreements, "the grantor deposits the funds or property with a neutral third party"); *Campbell*, 272 S.W.2d at 753 (stating that escrow is a written instrument deposited with "a stranger or third party"). Indeed, an escrow cannot typically be deposited with one of the parties to the escrow agreement, nor

15

with the agent or attorney of one of the parties to the agreement. *See Bradley v. Howell*, 126 S.W.2d 547, 564 (Tex. App.—Fort Worth 1939, writ dism'd judgm't cor.) ("An escrow deposit cannot be made with one of the parties to the instrument, or his agent."); *Smith v. Daniel*, 288 S.W. 528, 531 (Tex. App.—Beaumont 1926, writ dism'd w.o.j.) ("A deed is not in escrow while deposited with one of the parties, nor with his agent or attorney."); *see also Johnson v. Freytag*, 338 S.W.2d 257, 262 (Tex. App.— Beaumont 1960, writ ref'd n.r.e.) (stating that "[a]n escrow depositary should be a stranger or third party" but recognizing that there may be circumstances where an agent of or party to an instrument may be a depositary).

"The purpose of requiring a promisor to place [an item] in escrow is to protect the promisee by having a neutral third party hold the item until the happening of a contingency or performance of a condition, and then deliver that item to the promisee." *Vector Indus., Inc. v. Dupre*, 793 S.W.2d 97, 101 (Tex. App.—Dallas 1990, no writ). An escrow agent owes fiduciary duties to the parties of the escrow agreement, including the duty of loyalty, the duty to make full disclosure, and the duty to exercise a high degree of care to conserve the money placed in escrow and pay it only to those persons entitled to receive it. *Trahan v. Lone Star Title Co. of El Paso*, 247 S.W.3d 269, 287 (Tex. App.—El Paso 2007, pet. denied); *Williams*, 1997 WL 196345, at *5.

## 2. Application of the Law to the Facts

We begin our analysis by examining whether Holmes was a neutral third party who was a stranger to the Settlement Agreement. *See Williams*, 1997 WL 196345, at *5; *Bell*, 830 S.W.2d at 160; *Campbell*, 272 S.W.2d at 753. The summary-judgment record reflects that Holmes was an attorney representing Boozer and Raymond at trial in the 192nd District Court, that the Settlement Agreement was entered at trial, that Boozer and Raymond were parties to the Settlement Agreement, that Holmes spoke on behalf of Boozer and Raymond when the parties entered the Settlement Agreement, and that Holmes represented Boozer and Raymond in the appeal before the Dallas Court of Appeals where the parties were substantively arguing over who was entitled to the funds placed in the Regions Bank account. *See CTMI*, 479 S.W.3d at 280. Based on that record, we cannot say that Holmes was a neutral third party who was a stranger to the Settlement Agreement.[7] *See Williams*, 1997 WL 196345, at *5; *Bell*, 830 S.W.2d at 160; *Campbell*, 272 S.W.2d at 753.

The CTMI Parties argue that even if Holmes was not a neutral third party who was a stranger to the Settlement Agreement, that did not necessarily prevent him from

---

[7]In their brief, the CTMI Parties place a great deal of emphasis on the fact that Holmes represented Boozer and Raymond and not CTMI. While that fact may be true, it does not transform Holmes into a neutral third party who was a stranger to the Settlement Agreement. As stated above, Boozer and Raymond were parties to the Settlement Agreement, and Holmes represented them at trial in the 192nd District Court, represented them while the Settlement Agreement was being entered, and represented them on appeal before the Dallas Court of Appeals.

serving as an escrow agent, particularly where the escrow agreement was made in open court. But just because parties may agree that a party or agent of a party may be a depositary to an escrow agreement does not necessarily mean that the Settlement Agreement was an escrow agreement. *See Johnson*, 338 S.W.2d at 262 ("We do not mean to say that under no circumstances may an agent of or party to an instrument be a depositary, but in the absence of a clearly expressed mutual agreement of both parties to the instrument to that effect it will not be implied . . . .").

And, here, if we are to harmonize and give effect to all provisions of the Settlement Agreement so that none are rendered meaningless, we must construe the Settlement Agreement to be something other than an escrow agreement. First, the Settlement Agreement establishes that the contemplated bank account was to be a CTMI account—not Holmes's account—and the summary-judgment evidence reflects that the Regions Bank account was indeed a CTMI account. Second, the Settlement Agreement establishes that CTMI was to pay taxes on the account, and the summary-judgment evidence reflects that Regions Bank issued 1099-INT forms to "Thomas Wesley Holmes FBO CTMI LLC."[8] Third, and perhaps most critically, the Settlement Agreement states in two places that Fischer "will receive" payment of the deposited funds. If we are to construe the Settlement Agreement as an escrow

---

[8]In their brief, the CTMI Parties emphasize that the Settlement Agreement stated that Holmes would be "on the hook." But just because Holmes stated that he would be "on the hook," does not mean that CTMI would be "off the hook" if Fischer did not receive the payments contemplated under the Settlement Agreement.

agreement, then those provisions have no meaning because Fischer did not receive payment of the deposited funds.[9]

Based on our review of the summary-judgment record, we hold that the unique Settlement Agreement before us was not an escrow agreement but was simply a Rule 11 agreement—a contract—entered between the parties. Accordingly, we hold that the trial court erred by declaring that the Settlement Agreement was an escrow agreement and erred by declaring that the CTMI Parties had fulfilled their obligations under the Settlement Agreement and owed no further liability to the Fischer Parties under the Settlement Agreement. We further hold that the summary-judgment evidence establishes that the CTMI Parties breached the Settlement Agreement by failing to pay Fischer the amounts due under it.[10] *See Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.) (setting forth elements of a breach-of-contract claim). Accordingly, we sustain the Fischer Parties' second

---

[9]While the term "escrow" was used five times in the Settlement Agreement, a party's mere use of the term "escrow" does not transform an agreement into an escrow agreement. *Cf. Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 439 n.7 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("In this case, the Trusts point to a letter from one of Atkins's attorneys which purports to characterize Porter & Hedges as a 'stakeholder' of the settlement funds. This type of unilateral characterization, alone, is not sufficient to create a fiduciary duty.").

[10]As noted by the Fischer Parties in their reply brief, "Fischer never contested whether [the CTMI Parties] had properly determined the amount owed under the Settlement Agreement; rather, Fischer's only dispute with [the CTMI Parties] was whether Fischer actually received those amounts, as required by the Settlement Agreement."

issue, reverse the trial court's final judgment, and render judgment ordering the CTMI Parties to pay Fischer $990,175.66.[11]

### 3. Award of Attorney's Fees

Prior to the trial court's entering its final judgment, the parties entered a Rule 11 agreement concerning attorney's fees. Pursuant to that agreement, the parties agreed that if the Fischer Parties ultimately prevailed in the lawsuit, they were to recover from the CTMI Parties $450,000 as their reasonable and necessary attorney's fees for work done at the trial level, an additional $60,000 if they were successful following an appeal to the court of appeals, an additional $10,000 if they were successful on appeal following a petition of review to the Texas Supreme Court, and an additional $30,000 if they were successful on appeal following a grant of a petition of review by the Texas Supreme Court. The Rule 11 agreement provided that in the event the CTMI Parties ultimately prevailed, they would be entitled to recover their reasonable and necessary attorney's fees for identical amounts as those to be awarded to the Fischer Parties if they prevailed.

In the trial court's final judgment, the trial court awarded the CTMI Parties their attorney's fees in accordance with the Rule 11 agreement. Because the Fischer Parties have ultimately prevailed on this appeal, we reverse the trial court's award of

---

[11]Because we have sustained the Fischer Parties' second issue, we need not decide their first issue challenging the trial court's denial of their motion to transfer venue. *See* Tex. R. App. P. 47.1.

20

attorney's fees to the CTMI Parties, and we order that the Fischer Parties recover from the CTMI Parties $450,000 for the Fischer Parties' reasonable and necessary attorney's fees for work done at the trial court level, and we further order that the Fischer Parties recover from the CTMI Parties $60,000 for the Fischer Parties' reasonable and necessary attorney's fees for work done at the court of appeals level. We further order that if the Fischer Parties prevail in an appeal of this court's judgment to the Texas Supreme Court, the Fischer Parties will additionally recover from the CTMI Parties $10,000 for the Fischer Parties' reasonable and necessary attorney's fees if the case is resolved on a petition for review. And in the event the petition for review is granted by the Texas Supreme Court and the Fischer Parties ultimately prevail, the Fischer Parties will recover from the CTMI Parties both the $10,000 and an additional $30,000 for the Fischer Parties' reasonable and necessary attorney's fees.

### 4. Pre- and Post-Judgment Interest

In their motion for rehearing, the Fischer Parties have requested that we award them pre- and post-judgment interest.[12] The two sources of authority for an award of

---

[12]The CTMI Parties argue that the Fischer Parties have waived any entitlement to pre- and post-judgment interest by not raising a complaint regarding pre- and post-judgment interest in their appellate brief. We disagree. The Fischer Parties requested in both their live counterclaim and in their motion for summary judgment that the trial court award them pre- and post-judgment interest. And in their appellate brief, the Fischer Parties requested that we reverse the trial court's judgment and render an award in their favor. We do not think that the Fischer Parties were required to complain about pre- and post-judgment interest in their appellate brief when the trial

pre-judgment interest are: (1) an enabling statute and (2) legal principles of equity. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *Asta Partners, LLC v. Palaniswamy*, No. 02-20-00371-CV, 2021 WL 5133888, at *13 (Tex. App.—Fort Worth Nov. 4, 2021, no pet. h.) (mem. op.); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 486–87 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g). The enabling statute, Section 304.104 of the Finance Code, only applies to wrongful-death, personal-injury, and property-damage cases. *Asta Partners*, 2021 WL 5133888, at *13; *Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 513 (Tex. App.—El Paso 2018, no pet.); *see* Tex. Fin. Code Ann. § 304.101 (stating that the subchapter dealing with pre-judgment interest "applies only to a wrongful[-]death, personal[-]injury, or property[-]damage case").

---

court had not awarded them any amount by which interest could accrue, and we thus hold that the Fischer Parties have not waived their entitlement to pre- and post-judgment interest. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *DeGroot v. DeGroot*, 369 S.W.3d 918, 926–27 (Tex. App.—Dallas 2012, no pet.) ("Post-judgment interest is recoverable even if it is not specifically awarded in [a trial court's] judgment."); *Lee v. Lee*, 47 S.W.3d 767, 799 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("An award of prejudgment interest . . . is an automatic legal consequence since appellants pled for prejudgment interest. Neither the award of prejudgment interest, nor the accrual date of this interest, required a point of error for preservation."); *see also Hernandez v. LaBella*, No. 14-08-00327-CV, 2010 WL 431253, at *5 (Tex. App.—Houston [14th Dist.] Feb. 9, 2010, no pet.) (mem. op.) (reversing judgment of trial court and rendering judgment that appellees breached a settlement agreement and that appellant recover $100,000, but remanding to trial court for further proceedings to determine appellant's entitlement to pre-judgment interest).

22

In this breach-of-contract case, no enabling statute controls, and, thus, the only potential source for an award of pre-judgment interest is "general principles of equity." *Asta Partners*, 2021 WL 5133888, at *13. Where, as here, no enabling statute controls, the decision to award pre-judgment interest is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy in making its decision. *Id.*; *Whitlock v. CSI Risk Mgmt., LLC*, No. 05-19-01297-CV, 2021 WL 1712215, at *15 (Tex. App.—Dallas Apr. 30, 2021, pet. denied) (mem. op.); *Henry v. Masson*, 453 S.W.3d 43, 49 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Because the trial court, rather than this court, has the ultimate discretion to award pre-judgment interest, we decline the Fischer Parties' invitation to award them pre-judgment interest outright, and we instead remand the case to the trial court to determine the Fischer Parties' entitlement to pre-judgment interest and to calculate the amount of pre-judgment interest to be awarded, if any.[13] *See Hernandez*, 2010 WL 431253, at *5. We likewise remand the case to the trial court for determination of post-judgment interest.[14] *See* Tex. Fin. Code Ann. § 304.003 (providing post-judgment interest rate).

---

[13]Because we remand this determination to the trial court, we are only granting the Fischer Parties' motion for rehearing in part.

[14]We note that "[p]ost-judgment interest is mandated by section 304.001 of the Texas Finance Code, and is recoverable whether or not specifically awarded in the judgment." *SAP Trading Inc. v. Sohani*, No. 14-06-00641-CV, 2007 WL 1599719, at *2 (Tex. App.—Houston [14th Dist.] June 5, 2007, no pet.) (mem. op.).

## IV. CONCLUSION

Having sustained the Fischer Parties' second issue and needing not decide the Fischer Parties' first issue, we reverse the trial court's final judgment and render judgment awarding Fischer $990,175.66 on his breach-of-contract claim and awarding attorney's fees as set forth above. We remand the case to the trial court for further proceedings to determine the Fischer Parties' entitlement to pre-judgment interest and to calculate the amount of pre-judgment interest to be awarded, if any, and for determination of post-judgment interest. *See id.*; *Hernandez*, 2010 WL 431253, at *5.

/s/ Dana Womack

Dana Womack
Justice

Delivered: December 16, 2021